# Exhibit "1"

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☐ Superior
☑ State

**County** GWINNETT

**Docket #** 19-C-06844-S3

**Date Filed** 09-19-2019
MM-DD-YYYY

**Plaintiff(s)**

FIRST IC BANK

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

**Defendant(s)**

NORTH AMERICAN TITLE INSURANCE COMPANY

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|

**No. of Plaintiffs** 1

**No. of Defendants** 1

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**19-C-06844-S3**
**9/19/2019 4:49 PM**

CLERK OF STATE COURT

**Plaintiff/Petitioner's Attorney**   ☐ **Pro Se**

MALONE,   C. CYRUS III

| Last | First | Middle I. | Suffix |
|------|-------|-----------|--------|

**Bar #** 467825

---

## Check Primary Type (Check only ONE)

☑ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgement Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☐ Other General Civil (Specify) _____

---

## If Tort is Case Type:
## (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☐ Other (Specify) _____

_____

**Are Punitive Damages Pleaded?**  ☐ Yes  ☑ No

---

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**19-C-06844-S3**
**9/19/2019 4:49 PM**

CLERK OF STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

FIRST IC BANK,                              :
                                            :         CIVIL ACTION FILE
      PLAINTIFF,                        :
                                            :         NUMBER 19-C-06844-S3
      VS.                               :
                                            :
NORTH AMERICAN TITLE                        :
INSURANCE COMPANY,                          :
                                            :
      DEFENDANT.                        :

### SUMMONS

North American Title Insurance Co.
C/O C. T. Corporation System, Registered Agent
289 S. Culver St.
Lawrenceville, GA 30046

### TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

C. Cyrus Malone
2905 Piedmont Road – Suite C
Atlanta, GA 30305

an Answer to the complaint which is herewith served upon you within 30 days after the service of this summons upon you exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This the ___19___ day of _____SEPTEMBER_____ 20__19__.

_____
Deputy Clerk
State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - NN
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**19-C-06844-S3**
**9/19/2019 3:45 PM**

CLERK OF STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| FIRST IC BANK, | : | |
| | : | CIVIL ACTION FILE |
| PLAINTIFF, | : | |
| | : | NUMBER  19-C-06844-S3 |
| VS. | : | |
| | : | |
| NORTH AMERICAN TITLE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| DEFENDANT. | : | |

### COMPLAINT FOR DAMAGES

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiff, FIRST IC BANK, is a Georgia corporation engaged in the business of banking including the making of loans to individuals to purchase property, which loans are normally secured by a senior, first-priority security interest in the purchased property.

2.

Defendant, NORTH AMERICAN TITLE INSURANCE COMPANY, (NATIC) is a California corporation which transacts business in the State of Georgia and maintains a registered office and registered agent in Georgia, to wit: C T Corporation System, 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

- 1 -

3.

By virtue of its transaction of business in Georgia and maintaining a registered agent and registered office in Gwinnett County, Georgia, NATIC is subject to the jurisdiction of this court pursuant to O.C.G.A. § 9-10-91(1).

4.

Venue of this action is proper in this court pursuant to O.C.G.A. § 14-2-510(b)(1) because NATIC maintains its registered agent and registered office in Gwinnett County, Georgia.

FACTS

5.

On or about March 15, 2019, an individual named YING DUAN, entered into a written agreement to purchase from ISRAEL MALOWANY and JILL MALOWANY, a residence located at 1826 Ballybunion Drive, Johns Creek, Fulton County, Georgia 30097 (the "Property").

6.

A true and correct copy of the Purchase and Sale Agreement for the Property is attached hereto as Exhibit 1 and by this reference incorporated herein.

- 2 -

7.

By written Amendment Number 1 to the Purchase and Sale Agreement dated March 18, 2019, the parties agreed to change the closing attorney for the sale of the Property to Allen Chang – Dickason Law Group, 1801 Peachtree Street, Suite 155, Atlanta, GA 30309 ("DICKASON").

8.

Ying Duan entered into a Loan Agreement with First IC Bank to finance a portion of the purchase price for the Property.  The Loan Agreement provided that the funds provided to purchase the Property would be used to satisfy the existing Security Deed from the Malowanys to J. P. MORGAN CHASE BANK ("CHASE") so that First IC Bank would hold a senior, first-priority security interest in the Property when the sale closed.

9.

At all times pertinent to this action, DICKASON was an issuing agent and approved attorney for NATIC.

10.

On March 25, 2019, DICKASON, as Issuing Agent for NATIC, issued to FIRST IC BANK a Closing Protection Letter in which NATIC agreed, inter alia, to indemnify FIRST IC BANK from actual losses of settlement funds due to the theft, misappropriation or other failure of the Issuing Agent in connection with the

- 3 -

purchase and sale of the Property.  A true and correct copy of the Closing

Protection Letter is attached as Exhibit 2 and by this reference incorporated herein.

11.

NATIC also issued to FIRST IC BANK through its Issuing Agent,

DICKASON, a Commitment For Title Insurance showing a Commitment Date of

03/13/2019.  A true and correct copy of the Commitment For Title Insurance is

attached as Exhibit 3 and by this reference incorporated herein.

12.

The sale of the Property was closed by DICKASON on April 19, 2019.

13.

Incident to the sale of the Property, FIRST IC BANK, sent DICKASON

General and Specific Closing Instruction requiring the satisfaction of the CHASE

security deed. A true and correct copy of FIRST IC BANK'S General and Specific

Closing Instructions to DICKASON including DICKASON's acknowledgement

on the Settlement Statement that the CHASE loan had to be paid off are attached as

Exhibit 4 and by this reference incorporated herein.

14.

Unknown to FIRST IC BANK at the closing DICKASON did not pay off

the CHASE Loan but, on information and belief, stole or misappropriated the

funds or, otherwise, failed to apply the settlement funds as instructed.

- 4 -

15.

Because the settlement funds from FIRST IC BANK were not used to satisfy the CHASE loan, CHASE, rather than FIRST IC BANK, continued to hold a senior, first-priority security interest in the Property and continued to demand the Malowanys' pay their mortgage payments to CHASE.

16.

Upon information and belief, the Malowanys made three (3) mortgage payments to CHASE after the sale of the Property, and, through counsel, notified FIRST IC BANK the CHASE loan remained unpaid and further advised they were not going to continue making payments to CHASE.

17.

If the Malowanys stopped making payments, CHASE would foreclose its security interest in the Property, evict Ying Duan, FIRST IC BANK's borrower, and void FIRST IC BANK's security interest in the property.

18.

To protect its security interest in the Property, on September 17, 2019, FIRST IC BANK paid to CHASE Six Hundred Forty-three Thousand Three Hundred Sixty-three Dollars and Twenty-three Cents ($643,363.23) to pay off the Malowanys' loan from CHASE.  A true and correct copy of the Application for Wire Transfer and Confirmation of that Wire Transfer showing the payment of that

sum to CHASE by FIRST IC BANK are attached as Exhibit 5 and by this reference incorporated herein.

19.

FIRST IC BANK has made demand upon NATIC as required by the Closing Protection Letter but that demand has been ignored. A true and correct copy of FIRST IC BANK'S demand letter to NATIC with attachments and including the Federal Express confirmation of delivery is attached as Exhibit 6 and by this reference incorporated herein.

20.

The Malowanys have demanded that FIRST IC BANK reimburse them for the payments they made to CHASE.

21.

FIRST IC BANK denies it is liable to the Malowanys for any payments they voluntarily made to CHASE, but, to the extent FIRST IC BANK is determined to be liable for any payments, damages, fees or expenses incurred by the Malowanys by reason of DICKASON's fraudulent and dishonest conduct, it asks that it be awarded such sums as part of its claim herein.

22.

The theft and misappropriation of the Settlement Funds by DICKASON constitute fraudulent conduct and bad faith under O.C.G.A. § 13-6-11, entitling

FIRST IC BANK to recover, in addition to all other damages, its expenses of litigation, including reasonable attorney's fees in an amount to be established upon the trial of this action.

23.

All conditions precedent to the bringing of this action and making of these claims have occurred or been performed.

CLAIMS FOR RELIEF

WHEREFORE, FIRST IC BANK prays for a judgment against NATIC for the following relief:

(1)     A judgment in the amount of Six Hundred Forty-three Thousand Three Hundred Sixty-three Dollars and Twenty-three Cents ($643,363.23) for what it had to pay to CHASE to satisfy the prior security deed, which should have been done by DICKASON using the funds provided by the FIRST IC BANK loan proceeds provided to DICKASON at closing;

(2)     Interest on the Six Hundred Forty-three Thousand Three Hundred Sixty-three Dollars and Twenty-three Cents ($643,363.23) or any greater or other damages FIRST IC BANK is determined to have suffered in this matter at the legal rate of interest in Georgia set at seven per cent (7%) pursuant to O.C.G.A. 7-4-2 or such other rate of interest that the court may deem appropriate in this matter from September 17, 2019, until paid;

(3)     A judgment for any sums FIRST IC BANK is found liable to

reimburse to the Malowanys;

(4)     FIRST IC BANK's expenses of litigation, including reasonable

attorney's fees in an amount to be established upon the trial of this action;

(5)     All costs of this action; and

(6)     Such other or further relief as the court may deem just in the premises.

FREISEM, MACON, SWANN & MALONE LLP
Attorneys for Plaintiff – FIRST IC BANK

**/s/ C. Cyrus Malone**
C. Cyrus Malone, Attorney for Plaintiff
Georgia Bar Number 467825

FREISEM, MACON, SWANN & MALONE LLLP
2905 Piedmont Road – Suite C
Atlanta, GA 30305
(404) 974-4846 (direct dial)
cmalone@fmsmlaw.com

- 8 -

dotloop signature verification.



# PURCHASE AND SALE AGREEMENT

**Offer Date:** 03/15/2019





kw NORTH ATLANTA
KELLER

*Georgia*REALTORS®

**2019 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: 1826 Ballybunion Drive
   City Johns Creek            , County Fulton            , Georgia, Zip Code 30097
   MLS Number: 6504094            Tax Parcel I.D. Number: 11-0942-0339-108-1
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☐ (1) attached as an exhibit hereto;
   ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
   ☑ (3) the same as described in Deed Book 54447        , Page 317        , et. seq., of the land records of the above county; **OR**
   ☐ (4) Land Lot(s)_____ of the_____ District,_____ Section/ GMD,
   Lot_____ , Block_____ , Unit_____ , Phase/Section_____
   of_____ Subdivision/Development, according
   to the plat recorded in Plat Book_____ , Page_____ , et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ 1,410,000

3. **Closing Costs.**
   **Seller's Contribution at Closing:** $ 10,000

4. **Closing and Possession.**
   Closing Date shall be 04/19/2019            with possession of the Property transferred to Buyer
   ☑ at Closing OR ☐ ____ days after Closing at ____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement).

5. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)
   Keller Williams North Atlanta

6. **Closing Attorney/Law Firm.**
   Okelley and Sorohan Alpharetta

7. **Earnest Money.** Earnest Money shall be paid by ☑ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
   ☐ a. $_____ as of the Offer Date.
   ☑ b. $15,000_____ within 3 days from the Binding Agreement Date.
   ☐ c._____

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 7____ days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
   (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
   (2) shall pay Seller additional option money of $_____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; OR ☐ within ____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) **OR** ☑ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Selling Broker is** Keller Williams North Atlanta **and is:**
    (1) ☑ representing Buyer as a client.
    (2) ☐ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Buyer.

    b. **Listing Broker is** Atlanta Fine Homes Sothebys Intl **and is:**
    (1) ☑ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Seller.

    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    N/A

11. **Time Limit of Offer.** The Offer set forth herein expires at 7 o'clock P m. on the date 03/16/2019

| Buyer(s) Initials | Seller(s) Initials |
|---|---|

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Hung Yen Sung IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2019 by Georgia Association of REALTORS®, Inc.            F201, P

# EXHIBIT 1

dotloop signature verification:  

**B. CORRESPONDING PARAGRAPHS FOR SECTION A**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.                     F201, Purchase and Sale Agreement, Page 2 of 8, 01/01/19

dotloop signature verification:  

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
      (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
      (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
      (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.
   e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.

E-electronically Signed using eSignOnline™ [ Session ID : c7099337-e13l-4dd1-baaa-baab3aaac960 ]

dotloop signature verification:

 

10. **Brokerage Relationships in this Transaction.**

   a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

   (1) **No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.

   (2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

   I. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*

   (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

   (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

   (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

   (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

   ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

   (3) **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

   b. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.

   c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

C. **OTHER TERMS AND CONDITIONS**

1. **Notices.**

   a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.

Electronically Signed using eSignOnline™ | Session ID  e7899937-a43f-4451-baaa-caab3dead960 |





b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
   a. **Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.
   b. **Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.
   c. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty. In the event a Broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement.
   d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**
   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
   b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.
   c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

dotloop signature verification:

 

e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.

f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

i. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party. Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it may only be resolved by the written agreement of the Buyer and Seller.

j. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.

k. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

l. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

m. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**

a. **Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

b. **Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement.

c. **Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

d. **Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

6. **Beware of Cyber Fraud.** Fraudulent e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fraudulent e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in sending or receiving funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fraudulent verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

Electronically Signed using eSignOnline™ [ Session ID  e7699937-a43f-44c1-baab-baab3dced960 ]

dotloop signature verification:

7. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

☐ All Cash Sale Exhibit (F401) "_____"
☐ Back-up Agreement Contingency Exhibit (F604) "_____"
☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "_____"
☑ Community Association Fees, Disclosures and Related Issues ("Disclosure") Exhibit (F322) "C_____"
☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"
☑ Conventional Loan Contingency Exhibit (F404) "A_____"
☐ FHA Loan Contingency Exhibit (F407) "_____"
☐ Lead-Based Paint Exhibit (F316) "_____"
☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
☐ Legal Description Exhibit (F807 or other) "_____"
☐ Loan Assumption Exhibit (F416) "_____"
☐ Sale or Lease of Buyer's Property Contingency Exhibit (F604) "_____"
☑ Seller's Property Disclosure Statement Exhibit (F301, F304, F307 or F310) "B_____"
☐ Survey of Property as Exhibit "_____"
☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
☐ VA Loan Contingency Exhibit (F410) "_____"
☐ Other _____
☐ Other _____
☐ Other _____
☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1. At closing, the Seller agrees to provide a Buyer's Protection Plan Home Warranty issued by 2-10 Warranty at a cost to the Seller not to exceed $750. The term of the Home Warranty shall be for at least one year from the date of closing and said warranty shall be ordered by the buyer's agent.

2. Seller shall deliver Property clean and free of debris at the time of possession. Seller agrees that, as of the date of the transfer of possession of the Property, the Property shall have been thoroughly cleaned with all trash and debris having been removed from the Property.

3. Seller will provide a clear termite letter and 1-year termite bond. In addition, Seller shall provide Buyer, within three (3) days of the Binding Agreement Date, with a copy of any Georgia Wood Infestation Report which may have been obtained by Seller within 12 months of the Binding Agreement Date

4. Please address the issues in the inspection report. See attached report for reference.

*JM*
03/16/2019 3:58 PM EDT

*IM*
03/16/2019 3:58 PM EDT

*JD*
03/16/19
8:00 PM EDT
dotloop verified

☐ **Additional Special Stipulations are attached.**

Copyright© 2019 by Georgia Association of REALTORS®, Inc.

Electronically Signed using eSignOnline™ [ Session ID : e7899937-b41f-4491-baaa-bab3b0cef966 ]

dotloop signature verification:

## Buyer Acceptance and Contact Information

*Ying Duan*

dotloop verified
03/15/19 10:17 PM EDT
XYGS-YYAE-N7PJ-KWCW

**1 Buyer's Signature**

Ying Duan
Print or Type Name          Date

Buyer's Address for Receiving Notice

678-488-0345
Buyer's Phone Number: ☐ Cell   ☐ Home   ☐ Work

dy5243@me.com
Buyer's E-mail Address

**2 Buyer's Signature**

Print or Type Name          Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell   ☐ Home   ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

## Seller Acceptance and Contact Information

*Israel Malowany*

**1 Seller's Signature**

                                    03/16/2019
Print or Type Name          Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell   ☐ Home   ☐ Work

Seller's E-mail Address

*Jill Malowany*

**2 Seller's Signature**

                                    03/16/2019
Print or Type Name          Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell   ☐ Home   ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

## Selling Broker/Affiliated Licensee Contact Information

Keller Williams Realty North Atlanta
Selling Brokerage Firm

*Hung Yen Sung*

dotloop verified
03/15/19 10:10 PM EDT
HNRG-1NKS-UHWZ-LHCS

Broker/Affiliated Licensee Signature          Date

Hung Yen Sung               381649
Print or Type Name          GA Real Estate License #

850-339-3321               770-663-7481
Licensee's Phone Number          Fax Number

hungyensung@kw.com
Licensee's E-mail Address

NAMAR
REALTOR® Membership

5780 Windward Parkway, Suite 100
Broker's Address

Alpharetta, GA 30005

770-663-7291               770-663-7481
Broker's Phone Number          Fax Number

KWNF01                     H-36119
MLS Office Code          Brokerage Firm License Number

## Listing Broker/Affiliated Licensee Contact Information

Atlanta Fine Homes Sothebys Intl
Listing Broker Firm

*Christopher McCarley*          03/16/2019

Broker/Affiliated Licensee Signature          Date

Chris Mccarley               283806
Print or Type Name          GA Real Estate License #

678-294-5185               770-442-7317
Licensee's Phone Number          Fax Number

chrismccarley@atlantafinehomes.com
Licensee's Email Address

REALTOR® Membership

1125 SANCTUARY PKWY
Broker's Address

Alpharetta, Georgia 30009

770-442-7300               770-442-7317
Broker's Phone Number          Fax Number

ATFH02                     H-57502
MLS Office Code          Brokerage Firm License Number

---

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of 03/16/2019
and has been filled in by   Hung yen Sung

---

Copyright© 2019 by Georgia Association of REALTORS®, Inc.          F201, Purchase and Sale Agreement, Page 8 of 8, 01/01/19



Atlanta Fine
Homes

**Sotheby's**
INTERNATIONAL REALTY

 

**AMENDMENT TO AGREEMENT
AMENDMENT # _1_**

Date: March 18, 2019

*Georgia* REALTORS®

**2019 Printing**

**Whereas,** the undersigned parties have entered into a certain Agreement between _____
Ying Duan _____ ("Buyer") and Israel Malowany, Jill Malowany _____ ("Seller"),
with a Binding Agreement Date of March 16, 2019 _____ for the purchase and sale of real property
located at: 1826 Ballybunion Drive _____, Johns Creek _____, Georgia 30097 _____;
and

**Whereas,** the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

All parties agree that the closing attorney shall be changed from O'Kelly and Sorohan, Alpharetta, Georgia to Allen Chang - Dickason Law Group 1801 Peachtree St, NE, Suite 155, Atlanta, Georgia 30309.

END

☐ **Additional pages are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

_Ying Duan_____
**1 Buyer's Signature**

_____
**2 Buyer's Signature**

☐ **Additional Signature Page (F267) is attached.**
Keller Williams Realty North Atlanta ___
Selling Brokerage Firm

_Hung Yen Sung_____
**Broker/Affiliated Licensee Signature**

NAMAR _____
**REALTOR® Membership**

_Israel Malowany_____
**1 Seller's Signature**

_Jill Malowany_____
**2 Seller's Signature**

☐ **Additional Signature Page (F267) is attached.**
Atlanta Fine Homes Sothebys Intl. ___
Listing Brokerage Firm

_Christopher McCarley_____
**Broker/Affiliated Licensee Signature**

Atlanta Board of Realtors _____
**REALTOR® Membership**

**Acceptance Date.** The above Amendment is hereby accepted, 03/19/2019 11:05 PM EDT _____ o'clock _____.m. on the date of
_____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of
the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when
acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH  CHRIS MCCARLEY  IS INVOLVED AS A REAL
ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO
THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.                    F701, Amendment to Agreement, 01/01/19

GA735-19-2604055-02



**NORTH AMERICAN TITLE INSURANCE COMPANY**

| Georgia<br>ALTA Closing Protection Letter<br>Single Transaction<br>Revised 12-1-11 |
| --- |

3/25/2019

First IC Bank
ISAOA/ATIMA
5593 Buford Highway

Atlanta, GA 30340

ATTENTION: First IC Bank

Re: Closing Protection Letter

| **Agent's File #** GA-19-6038 | |
| --- | --- |
| **Loan #** 7511902023 | **Loan $** 846000.00 |

| **Issuing Agent** | **Approved Attorney** (if applicable) |
| --- | --- |
| Dickason Law Group<br>1801 Peachtree Street NE, Suite 155<br>Atlanta, GA 30309 | |
| **Property Address** | **Approved Settlement Office** (if applicable) |
| 1826 Ballybunion Drive<br>Johns Creek, GA 30097 | |

| **Buyer/Borrower:** Ying Duan |
| --- |
| **Brief Legal Description:** |

Dear Sir or Madam:

North American Title Insurance Company (the "Company") in consideration of your acceptance of this letter agrees, subject to the Conditions and Exclusions set forth below, to indemnify you for actual loss of settlement funds incurred by you in connection with the closing of the Real Estate Transaction hereafter conducted by the Issuing Agent, Underwritten Title Company or Approved Attorney on or after the date of this letter, provided:

(A)  the Company issues or is contractually obligated to issue title insurance for your protection in connection with the closing of the Real Estate Transaction;

(B)  you are to be the (i) lender secured by an Insured Mortgage, as defined in the ALTA Loan Policy (6-17-06), its assignee or a warehouse lender, (ii) purchaser of an interest in land, or (iii) lessee of an interest in land; and

(C)  the aggregate of all funds you transmit to the Issuing Agent, Underwritten Title Company or Approved Attorney for the Real Estate Transaction does not exceed the amount secured by the Insured instrument ; and

further provided the loss arises out of:

1.  Failure of the Issuing Agent, Underwritten Title Company or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, including the obtaining of documents and the disbursement of funds necessary to establish the status of title or lien, or (b) the obtaining of any other document, specifically required by you, but only to the extent the failure to obtain the other document affects the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, and not to the extent that your instructions require a determination of the validity, enforceability or the effectiveness of the other document, or

2.  Fraud, theft, dishonesty or negligence of the Issuing Agent, Underwritten Title Company or Approved Attorney in handling your funds or documents in connection with the closing to the extent that fraud, theft, dishonesty or negligence relates to the status of the title to that interest in land or to the validity, enforceability, and priority of the lien of the mortgage on that interest in land.

If you are a lender protected by this letter, your borrower, your assignee and your warehouse lender in connection with an Insured Mortgage shall be protected as if it was addressed to them.

**Conditions and Exclusions**

1.  The Company shall have no liability for loss arising out of:
    a.  Failure of the Issuing Agent, Underwritten Title Company or Approved Attorney to comply with closing instructions that

**EXHIBIT 2**

require title insurance protection inconsistent with that set forth in the Company's title insurance binder or commitment.

b.  Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as shall result from failure of the Issuing Agent, Underwritten Title Company or Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

c.  Defects, liens, encumbrances or other matters in connection with the Real Estate Transaction. This Exclusion does not affect the coverage afforded in the Company's title insurance policy issued in connection with the Real Estate Transaction.

d.  Fraud, theft, dishonesty or negligence of your employee, agent, attorney or broker.

e.  Your settlement or release of any claim without the Company's written consent.

f.  Any matters created, suffered, assumed or agreed to by you or known to you.

2.  If the closing is conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of the Company's title insurance policy must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.

3.  When the Company shall have indemnified you pursuant to this letter, it shall be subrogated to all rights and remedies you have against any person or property had you not been indemnified. The Company's liability for indemnification shall be reduced to the extent that you have impaired the value of this right of subrogation.

4.  The Company's liability for loss under this letter shall not exceed the least of:
    (a)  the amount of your settlement funds;
    (b)  the Company's liability under its title insurance policy at the time written notice of a claim is made under this letter; or
    (c)  the value of the lien of the Insured Mortgage, or the interest in the land insured or to be insured under the Company's title insurance policy at the time written notice of a claim is made under this letter.

5.  Payment to you or to the owner of the Indebtedness under the Company's title insurance policy or policies or from any other source shall reduce liability under this letter by the same amount. Payment in accordance with the terms of this letter shall constitute a payment pursuant to Section 10 of the Conditions of the policy.

6.  The Issuing Agent or Underwritten Title Company is the Company's agent only for the limited purpose of issuing title insurance policies. Neither the Issuing Agent, Underwritten Title Company nor the Approved Attorney is the Company's agent for the purpose of providing closing or settlement services. The Company's liability for your losses arising from those closing or settlement services is strictly limited to the protection expressly provided in this letter. The Company shall have no liability for loss resulting from the fraud, theft, dishonesty or negligence of any party to the Real Estate Transaction other than an Issuing Agent, Underwritten Title Company or Approved Attorney, the lack of creditworthiness of any borrower connected with the Real Estate Transaction, or the failure of any collateral to adequately secure a loan connected with the Real Estate Transaction.

7.  You must promptly send written notice of a claim under this letter to the Company at its principal office at 1855 Gateway Boulevard, Suite 600, Concord, CA 94520. If the Company is prejudiced by your failure to provide prompt notice, the Company's liability to you under this letter shall be reduced to the extent of the prejudice. In no event shall the Company be liable for a loss if the written notice is not received by the Company within one year from the date of the closing.

8.  This letter will cover the Real Estate Transaction if it closes within one year after the date of this letter. The Company may terminate its obligation to cover the Real Estate Transaction if it has not closed by sending written notice to the Addressee.

9.  The protection of this letter extends only to real estate in Georgia.


No previous letter, endorsement or similar agreement for closing protection applies to the Real Estate Transaction.

**North American Title Insurance Company**

Valerie Jahn-Grandin
Chief Underwriting Counsel
760 N.W. 107 Avenue, Suite 401
Miami, Florida 33172
800-374-8475
vjahn-grandin@natic..com

Copyright 2006-2011 American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

American Land Title Association Commitment for Title Insurance – Adopted 08-01-2016
Form C.GU.1007



## NORTH AMERICAN TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

### NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, North American Title Insurance Company, a California Company (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### NORTH AMERICAN TITLE INSURANCE COMPANY

BY  Emilio Fernandez, **PRESIDENT**

ATTEST  Valerie Jahn-Grandin, **SECRETARY**



*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

# EXHIBIT 3

**COMMITMENT CONDITIONS**

1. **DEFINITIONS**
   (a) "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
   (b) "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   (c) "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
   (d) "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   (e) "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   (f) "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
   (g) "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
   (h) "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a) the Notice;
   (b) the Commitment to Issue Policy;
   (c) the Commitment Conditions;
   (d) Schedule A;
   (e) Schedule B, Part I—Requirements; and
   (f) Schedule B, Part II—Exceptions; and
   (g) a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**
   (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
       (i) comply with the Schedule B, Part I—Requirements;
       (ii) eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
       (iii) acquire the Title or create the Mortgage covered by this Commitment.
   (b) The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   (c) The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



(d)    The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.

(e)    The Company shall not be liable for the content of the Transaction Identification Data, if any.

(f)    In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

(g)    In any event, the Company's liability is limited by the terms and provisions of the Policy.

**6.    LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT**

(a)    Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

(b)    Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

(c)    Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

(d)    The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

(e)    Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

(f)    When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.    IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT**

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

**8.    PRO-FORMA POLICY**

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

*Issued by:*



**NORTH AMERICAN TITLE INSURANCE COMPANY**

1855 Gateway Boulevard, Suite 600
Concord, CA 94520
Or call us at:
Western States: 800-869-3434    Eastern States: 800-374-8475
www.natic.com

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

**NORTH AMERICAN TITLE INSURANCE COMPANY**

# COMMITMENT – Schedule A

Transaction Identification Data for reference only:

Issuing Agent: Dickason Law Group

Issuing Office: 1801 Peachtree Street NE, Suite 155, Atlanta, GA 30309

ALTA® Universal ID: 1079845

Loan ID Number: 7511902023

Commitment Number: GA-19-6038

Issuing Office File Number: GA-19-6038

Property Address: 1826 Ballybunion Drive, Johns Creek, GA 30097

Revision Number:

## SCHEDULE A

1. Commitment Date: 03/13/2019

2. Policy to be issued:
   (a) ALTA Homeowner's Policy (12-02-13)
       Proposed Insured: Ying Duan
       Proposed Policy Amount: $1,410,000.00

   (b) ALTA Short Form Loan Policy (12-03-12)
       Proposed Insured: First IC Bank, ISAOA/ATIMA
       5593 Buford Highway, Atlanta, GA 30340
       Proposed Policy Amount: $846,000.00

3. The estate or interest in the Land described or referred to in this Commitment is fee simple.

4. Title to the estate or interest in the Land is at the Commitment date vested in: Israel Malowany and Jill A. Malowany, as Joint Tenants with Rights of Survivorship and not as Tenants in Common by deed dated 12/08/2014 and recorded in Fulton County Clerk of Superior Court on 12/10/2014 in Book 54447, Page 317.

5. The Land is described as follows:
   See attached Exhibit A.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Sean Kasper
Dickason Law Group

By

**North American Title Insurance Company**
Emilio Fernandez
*President*

**NATIC**
NORTH AMERICAN TITLE INSURANCE COMPANY

_____
Agent Signature

Agent Number:
Matt.dickason@dickasonlaw.com

Schedule A – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





# North American Title Insurance Company

1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

# COMMITMENT – Schedule A

Schedule A – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

**COMMITMENT – Schedule B-I**

File No.: GA-19-6038                    Commitment No.: GA-19-6038

**SCHEDULE B, PART I**
**Requirements**

All of the following Requirements must be met:

1.  Pay the agreed amount for the estate or interest to be insured.

2.  Pay the premiums, fees, and charges for the Policy to the Company

3.  Pay all the taxes and/or assessments, levied and assessed against the land, which are due and payable

4.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

5.  In the Loan Policy to be issued, the company will insure against defects in the title which are filed for record during the period of time between the effective date of this commitment and the date of filing for record of the documents creating the estate or interest being insured, except for matters of which the insured has any knowledge. Any provisions in this commitment which are in conflict herewith are hereby deemed deleted.

6.  Documents, satisfactory to us, creating the interest in the land and/or the mortgage to be insured, must be signed, delivered and recorded:

7.  Deed from Israel Malowany and Jill A. Malowany conveying the premises described in Schedule A herein, to Ying Duan.

    Security Deed from Ying Duan to First IC Bank securing the principal amount of $846,000.00.

8.  Release of the insured property from the Security Deed dated December 8, 2014 and recorded on December 10, 2014 in Book 54447, Page 321 in the official records of Fulton County Clerk of Superior Court, to be paid with proceeds of loan and released in the original principal amount of $700,000.00 from Israel Malowany and Jill A Malowany to JPMorgan Chase Bank, NA.

9.  Release of the insured property from the Security Deed dated October 17, 1994 and recorded on October 31, 1994 in Book 18930, Page 279 in the official records of Fulton County Clerk of Superior Court, to be paid with proceeds of loan and released in the original principal amount of $386,000.00 from Roy E Claassen and Jean M Claassen to Homebanc Mortgage Corporation.

10. Liens and judgments have been searched for names on title.

11. Taxes and Assessments for 2018 for the County of Fulton were Paid in the amount of $12,253.06 on 10/29/2018 for Parcel No. 11 -0942-0339-108-1 (Due Annually on 10/31/2018) and Taxes for 2018 for the City of Johns Creek were Paid in the amount of $1,889.15 on 10/10/2018.

12. Homeowners Association's written confirmation that all condominium or association assessments (special and general), recreational lease payments (if any), dues, or other fees are current; and, if required by the Declaration

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Schedule B-I – Requirements – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

**NORTH AMERICAN TITLE INSURANCE COMPANY**

# COMMITMENT – Schedule B-I

of Condominium or Covenants, that the Association's approval of the proposed conveyance and/or Security Deed is obtained.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Schedule B-I – Requirements – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.





**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

# COMMITMENT – Schedule B-II

File No.: GA-19-6038                    Commitment No.: GA-19-6038

### SCHEDULE B, PART II
### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records;(b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession in the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  Any mineral or mineral rights leased, granted or retained by current or prior owners.

6.  Taxes and assessments for the year 2019 and subsequent years, not yet due and payable.

7.  Any additional city or county taxes for the calendar years 2017 and 2018 as may be further assessed by Fulton County subsequent to the initial billing.

8.  Rights of tenants in possession.

9.  All matters as shown on plat of survey recorded in Plat Book 168, Page(s) 118, aforesaid records.

10. Reservations, conditions, powers of attorney, easements, options, covenants, agreements, limitations on title and all other provisions contained in or incorporated by reference into Declaration of Covenants, Conditions, Restrictions, and Easements for St. Ives Country Club executed by North Fulton Land Equity, Ltd., a Georgia general partnership dated 08/11/1987, and recorded in Book 11000, Page(s) 293, aforesaid records, in the related By-Laws, if any, in any instrument creating the estate or estates hereby insured as shown in Schedule A hereof and any other allied instrument referred to in the aforesaid instruments.

11. NOTE: Property is located in a PUD.
    NOTE: The Lender's Policy, when issued, will contain an Alta 5 Planned Unit Development Endorsement.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Schedule B-II – Exceptions – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.





**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

NORTH AMERICAN TITLE INSURANCE COMPANY

# COMMITMENT – Schedule B-II

NOTE: The Lender's Policy, when issued, will contain an Alta 8.1 Environmental Endorsement.
NOTE: The Lender's Policy, when issued, will contain an Alta 9 Comprehensive Endorsement.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Schedule B-II – Exceptions – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





**NORTH AMERICAN TITLE INSURANCE COMPANY**

# North American Title Insurance Company
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

# COMMITMENT – Exhibit A

File No.: GA-19-6038                                    Commitment No.: GA-19-6038

**EXHIBIT A**
**Property Description**

All that tract or parcel of land lying and being in Land Lot 340 of the 1st District, 1st Section of Fulton County, Georgia, being Lot A189, Pod 4 of St. Ives Country Club Subdivision, Phase II, as per plat thereof recorded in Plat Book 168, Page 118, Fulton County, Georgia, records, which plat is incorporated herein and made a part hereof by reference for a more detailed description.  Said property being known as 1826 Ballybunion Drive according to the current system of numbering property in Fulton County, Georgia.

This Deed is given subject to all easements and restrictions of record, if any.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Exhibit A – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

# COMMITMENT – Chain of Title

File No.: GA-19-6038                      Commitment No.: GA-19-6038

### CHAIN OF TITLE

The only conveyances affecting said land, which recorded within twenty-four (24) months of the date of this report, are as follows:

1.      A deed from Qi Wang to Israel Malowany and Jill A. Malowany, as Joint Tenants with Rights of Survivorship and not as Tenants in Common dated 12/08/2014 and recorded on 12/10/2014 in Book 54447 at Page 317 in the Official Records of the Fulton County Clerk of Superior Court.

2.      A deed from Lynda G. Dean to Qi Wang dated 10/30/2009 and recorded on 11/13/2009 in Book 48534 at Page 267 in the Official Records of the Fulton County Clerk of Superior Court.

Chain of Title – ALTA® Commitment for Title Insurance (8/1/16)

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

 

FROM:  FIRST IC BANK
       5593 BUFORD HWY
       ATLANTA, GEORGIA 30340
       Phone: (770)407-1493
       Fax: (678)281-1303

TO:    DICKASON LAW GROUP
       1801 PEACHTREE STREET SUITE 155
       ATLANTA, GEORGIA 30309
       (770)407-5244

ATTN:  MATTHEW A DICKASON

RE:    Borrower(s): YING DUAN


       Property Address: 1826 BALLYBUNION DRIVE
       JOHNS CREEK, GEORGIA 30097

Document Date: APRIL 19, 2019

Closing Date: APRIL 19, 2019

Disbursement: APRIL 19, 2019

Case No.:

Loan No.: 7511902023

App. No.:

Order No.: GA-19-6038

Escrow No.: GA-19-6038

# GENERAL CLOSING INSTRUCTIONS

Do not close or fund this loan unless **ALL** conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for our loan proceeds and approved secondary financing must pass to you in the form of cash. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property.

You must follow these instructions exactly. These closing instructions can only be modified with our advance written approval. You shall be deemed to have accepted and to be bound by these closing instructions if you fail to notify us in writing to the contrary within 24 hours of your receipt hereof or if you disburse any funds to or for the account of the Borrower(s).

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within  48 HOURS  of the signing. Please return certified copies of those documents that are to be recorded. Failure to comply with these instructions may delay funding.

## EXECUTION OF DOCUMENTS

1. Each Borrower must sign all documents exactly as his or her name appears on the blank line provided for his or her signature. All signatures must be witnessed if required or customary. All signature acknowledgments must be executed by a person authorized to take acknowledgments in the state of closing.

2. Any correction to loan documents must be approved in writing by us in advance. **No white-out permitted.** Approved deletion should be made by marking a single line through the language being deleted. All additions and deletions must be initialed by all borrowers. No corrections or deletions to the Closing Disclosure are permitted.

3. All Powers of Attorney must be provided to and approved by us in advance. If approved, the Power of Attorney must be recorded in the same county(ies) in which the Security Instrument is recorded, a certified copy provided to us.

GENERAL CLOSING INSTRUCTIONS
GCI.MSC  06/16/15                         Page 1 of 2                         DocMagic *eForms*
                                                                             www.docmagic.com

# EXHIBIT 4




## RESCISSION

1. If the transaction is subject to rescission, provide **each** Borrower and **each** person having any ownership interest in the security property with **two (2)** copies of the completed Notice of Right to Cancel. The Notice of Right to Cancel must be properly completed (including all dates) and each borrower and person given a Notice of Right to Cancel must execute an acknowledgment of receipt. Your failure to properly complete and provide the Notice of Right to Cancel to each person entitled to receive it and obtain an acknowledgment of receipt will delay this closing.

2. No Borrower or other person having an ownership interest in the Security Property may modify or waive his or her right to rescind without our prior written consent.

3. If any Borrower or other person having an ownership interest in the security property indicates that he or she wishes to cancel this transaction, contact us immediately for further instructions.

4. Provide to each Borrower and each person having any ownership interest in the security property a Closing Disclosure, and obtain an acknowledgment of receipt executed by each borrower and person. Your failure to properly provide the Closing Disclosure to each person entitled to receive it and obtain an acknowledgement of receipt will delay this closing.

## SURVEYS

1. A valid survey dated within 90 days of closing is required in areas where surveys are customary.

2. The survey must contain all relevant and customary information and certifications and the legal description, lot size and street must agree with the appraisal and closing documents.

## HAZARD INSURANCE

1. The Borrower(s) must provide satisfactory evidence of hazard insurance coverage and flood insurance coverage if the Property is located in a special flood hazard area.

2. Dwelling coverage must be equal to the lesser of the loan amount or the full replacement value of the property improvements, and must extend for either a term of at least one (1) year after the closing date for purchase transactions or    six (6)    months after the closing date for refinance transactions.

3. Loss payee/mortgagee clause to read:   FIRST IC BANK
                                          IT'S SUCCESSORS AND ASSIGNS
                                          5593 BUFORD HWY
                                          ATLANTA, GEORGIA 30340
                                          Loan Number: 7511902023

**ACKNOWLEDGED AND AGREED:**

Settlement Agent   MATTHEW A DICKASON

GENERAL CLOSING INSTRUCTIONS
GCI.MSC  06/16/15                          Page 2 of 2                          DocMagic eForms
                                                                               www.docmagic.com



FROM: FIRST IC BANK
5593 BUFORD HWY
ATLANTA, GEORGIA 30340
Phone: (770) 407-1493
Fax:  (678) 281-1303

TO: DICKASON LAW GROUP
1801 PEACHTREE STREET SUITE 155
ATLANTA, GEORGIA 30309
(770) 407-5244

ATTN: MATTHEW A DICKASON

RE:  Borrower(s): YING DUAN

Property Address: 1826 BALLYBUNION DRIVE
JOHNS CREEK, GEORGIA 30097

Document Date: APRIL 19, 2019

Closing Date: APRIL 19, 2019

Disbursement Date: APRIL 19, 2019

Case No.:

Loan No.: 7511902023

App. No.:

Order No.: GA-19-6038

Escrow No.: GA-19-6038

# SPECIFIC CLOSING INSTRUCTIONS

## LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| (X) Adjustable Rate Note | (X) Borrowers Cert. | (X) Compliance Agreement |
| (X) Deed of Trust | (X) Initial Escrow Acct. Disc. | (X) 4506T |
| (X) Adjustable Rate Rider | Stmt. | (X) CCD |
| (X) Planned Unit Dev. Rider | (X) Impound Auth. | (X) Transfer of Servicing |
| (X) Acknowledgment Waiver Rider | (X) Affidavit and Agrmnt. | (X) AD |
| (X) Program Disclosure | (X) Worksheets | (X) W-9 |
| (X) Payment Letter | (X) Loan Application | (X) General Cls. Instr. |
| (X) Hazard Ins. Req. | (X) Patriot Act | (X) Specific Cls. Instr. |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement or Closing Disclosure (as applicable) to each Borrower.

## LOAN TERMS:

Loan Amount: 846,000.00
Initial Advance:
Sales Price: 1,410,000.00
Term (Months): 360
Interest Rate: 5.500
Initial Payment: 4,803.49
First Payment Date: 06/01/19
Last Payment Date: 05/01/49

ARM Loan: (X) Yes  ( ) No
Index: 2.520
Margin: 5.125
Periodic Rate Cap:  2.000
Lifetime Rate Cap:  5.000
Lifetime Rate Floor:  5.125
Interest Change Date:  05/01/24
Payment Change Date:  06/01/24
Loan Purpose: PURCHASE

## PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing.  Indicate payoffs on the HUD-1 Settlement Statement or Closing Disclosure (as applicable) or provide other satisfactory evidence of payoff:

## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

Funding Authorization:
You must contact our office at fei.storm@firsticbank.com to obtain a Funding
authorization prior to disbursing funds for this transaction

**SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS**

## TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1.  THIS LOAN MUST RECORD IN  1ST  LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE.  PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2.  Vesting to read: YING DUAN

3.  Title Policy must contain the following endorsements (or their equivalents):

4.  ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable: ALL PAID

(iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated  MARCH 13, 2019: SEE ATTACHED

## SECONDARY FINANCING:

Secondary financing in the amount of $  NONE                    has been approved

SPECIFIC CLOSING INSTRUCTIONS
SCI.MSC  01/31/18                                   Page 1 of 2                          DocMagic eServices
www.docmagic.com

 

## ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID BY |
|------|--------|-----|---------|
| Loan Origination Fee to: FIRST IC BANK | $8,460.00 | | Borrower |
| Underwriting Fee to: First IC Bank | $500.00 | | Borrower |
| Appraisal Fee to: Class Valuation | $625.00 | $625.00 | Borrower |
| Credit Report to: Factual Data | $28.24 | | Borrower |
| Tax Service Fee to: First American | $84.00 | | Borrower |
| Flood Certification to: Service Link | $18.00 | | Borrower |
| Title - Owner's Title Insurance(Optional) to: | $3,492.00 | | Borrower |
| Title - Lender's Title Insurance to: North Am | $2,089.00 | | Borrower |
| Title - Closing Protection Let Fee to: North | $45.00 | | Borrower |
| Title - Courier Fee to: Dickason Law Group | $50.00 | | Borrower |
| Title - Title Examination Fee to: Dickason La | $225.00 | | Borrower |
| Title - Settlement Fee to: Dickason Law Group | $595.00 | | Borrower |
| Recording Mortgage Fee to: County Recorder | $64.00 | | Borrower |
| GRMA to: State of GA | $10.00 | | Borrower |
| Recording Deed Fee to: County Recorder | $12.00 | | Borrower |
| Intangible Tax to: Fulton County Clerk of Sup | $2,538.00 | | Borrower |
| Transfer Tax to: Fulton County Clerk of Super | $1,410.00 | | Borrower |
| HOA Initiation Fee to: ST. IVES CC HOA | $3,000.00 | | Borrower |

Subtotal of Estimated Fees and Costs:  $ _____22,620.24_____

## PER DIEM INTEREST:

From: 04/19/19          To:05/01/19
(Anticipated Closing Date)

__12__ days at $ _____129.2500_____ per day     Subtotal of Per Diem Interest:  $ _____1,551.00_____

## IMPOUNDS/ESCROWS:

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement
or Closing Disclosure (as applicable).

| | | | | | |
|---|---|---|---|---|---|
| CITY PROPERTY TAX | 7 | month(s) | at $ ____157.43____ per Month | = $ ____1,102.01____ |
| COUNTY PROPERTY TAX | 7 | month(s) | at $ ____1,033.84____ per Month | = $ ____7,236.88____ |
| HAZARD INSURANCE | 1 | month(s) | at $ ____285.29____ per Month | = $ ____285.29____ |
| | | month(s) | at $ _____ per Month | = $ _____ |
| | | month(s) | at $ _____ per Month | = $ _____ |
| | | month(s) | at $ _____ per Month | = $ _____ |

Aggregate Escrow Adjustment:  $ _____0.00_____

Impound Subtotal:  $ _____8,624.18_____
Mortgage Ins. Premium:  $ _____
**TOTAL OF FEES AND COSTS:**  $ _____32,795.42_____

## HUD-1 SETTLEMENT STATEMENT OR CLOSING DISCLOSURE:

The final HUD-1 Settlement Statement or Closing Disclosure (as applicable) must be completed at settlement and must
accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions
subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of
the final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to  FIRST IC BANK @
(678) 281-1303           Attention:  Quality Assurance
Send the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to us at the following address within
24 hours of settlement:  5593 BUFORD HWY, ATLANTA, GEORGIA 30340

## ADDITIONAL INFORMATION: BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender
and wire all funds only to: FIRST IC BANK
5593 BUFORD HWY, ATLANTA, GEORGIA 30340
If you have any questions regarding any of these instructions, please contact  FIRST IC BANK
                                                                                                          at  (770)407-1493

**BORROWER ACKNOWLEDGMENT:** I/We have read and acknowledged receipt of these Closing Instructions.

_____  4-18-2015       _____
Borrower  YING DUAN          Date       Borrower                          Date

_____                  _____
Borrower                          Date    Borrower                          Date

_____                  _____
Borrower                          Date    Borrower                          Date

## ACKNOWLEDGED AND AGREED:

                                          _____  4/18/2019
                                          Settlement Agent                  Date
                                          MATTHEW A DICKASON

FROM:  FIRST IC BANK
       5593 BUFORD HWY
       ATLANTA, GEORGIA 30340
       Phone: (770)407-1493
       Fax: (678)281-1303

TO:    DICKASON LAW GROUP
       1801 PEACHTREE STREET SUITE 155
       ATLANTA, GEORGIA 30309
       Phone: (770)407-5244

ATTN:  MATTHEW A DICKASON

RE:    Borrower(s): YING DUAN

       Property Address: 1826 BALLYBUNION DRIVE, JOHNS
       CREEK, GEORGIA 30097

Document Date: APRIL 19, 2019

Closing Date: APRIL 19, 2019

Disbursement Date: APRIL 19, 2019

Case No.:

Loan No.:7511902023

App. No.:

Order No.:GA-19-6038

Escrow No.:GA-19-6038

## ADDENDUM TO CLOSING INSTRUCTIONS
(Additional conditions to be satisfied prior to disbursement of loan proceeds)

CLOSING AGENT TO PROVIDE A COPY OF THE FINAL EXECUTED SELLER CLOSING DISCLOSURE
PRIOR TO PROVIDING FUNDING AUTHORIZATION AND INCLUDE IN THE RETURNED SIGNED
PACKAGE.CLOSING AGENT IS REQUIRED TO HAVE THE ENCLOSED FINAL CLOSING DISCLOSURE

EXECUTED BY ALL APPLICABLE PARTIES, INCLUDING ANY APPLICANTS THAT HAVE A RIGHT TO

RESCIND, AND RETURN IN THE SIGNED CLOSING PACKAGE.

VERIFICATION OF IDENTIFICATION: SETTLEMENT AGENT MUST ASK EACH BORROWER'S NAME,
RESIDENTIAL ADDRESS, DATE OF BIRTH, AND TAXPAYER IDENTIFICATION NUMBER.
EACHINDIVIDUAL MUST PRESENT AT LEAST (2) FORMS OF IDENTIFYING DOCUMENTS FOR REVIEW;
AT LEAST ONE (1) OF THE IDENTIFYING DOCUMENTS MUST BE A VALID AND
CURRENTGOVERNMENT-ISSUED DOCUMENT.

BORROWER'S FUNDS AT CLOSING:

CLOSING AGENT TO PROVIDE COPIES OF SOURCE DOCUMENTS FOR ALL FUNDS COLLECTED AT
CLOSING PAID BY THE BORROWER OR ON THE BORROWER'S BEHALF (PERSONAL CHECK, CASHIER
CHECK, MONEY ORDER, ETC) FOR MONIES PAID AT SETTLEMENT AND RETURN IN THE COMPLETE
CLOSING PACKAGE TO THE LENDER.

BORROWER'S CLOSING COSTS (CASH TO CLOSE):

BORROWER(S) MAY NOT PAY MORE THAN $·583,827.44 AT CLOSING.

Which included verified funds -

Account Holder - Ying Duan-Chase , Account end with 0799 for the amount of
$569,182.68

Account Holder - Ying Duan-Chase , Account end with 6955 for the amount of
$14,644.76

BORROWER APPRAISAL ACKNOWLEDGEMENT THAT AT LEAST THREE OR MORE BUSINESS DAYS PRIOR
TO THE CLOSING OF THEIR MORTGAGE LOAN 1 )THEY RECEIVED A COPY OF THE APPRAISIAL OR
2) THAT THEY PREVIOUSLY WAIVED THEIRRIGHT TO FINAL 1003 AT CLOSING

NOTARY/CLOSING AGENT TO INSURE ALL BORROWER(S) INITIAL ANY AND ALL CHANGES, SIGN AND

DATE THE FINAL 1003 (UNIFORM RESIDENTIAL LOAN APPLICATION)·

EXECUTION OF CLOSING DOCUMENTS:-

**ACKNOWLEDGED AND AGREED:**

_____     4/19/2019
Settlement Agent                Date
MATTHEW A DICKASON

| | |
|---|---|
| FROM: FIRST IC BANK<br>5593 BUFORD HWY<br>ATLANTA, GEORGIA 30340<br>Phone: (770)407-1493<br>Fax: (678)281-1303 | Document Date: APRIL 19, 2019<br><br>Closing Date: APRIL 19, 2019<br><br>Disbursement Date: APRIL 19, 2019 |
| TO: DICKASON LAW GROUP<br>1801 PEACHTREE STREET SUITE 155<br>ATLANTA, GEORGIA 30309<br>Phone: (770)407-5244 | Case No.:<br><br>Loan No.:7511902023<br><br>App. No.: |
| ATTN: MATTHEW A DICKASON | Order No.:GA-19-6038 |
| RE: Borrower(s): YING DUAN | Escrow No.:GA-19-6038 |
| Property Address: 1826 BALLYBUNION DRIVE, JOHNS<br>CREEK, GEORGIA 30097 | ( CONTINUED ) |

## ADDENDUM TO CLOSING INSTRUCTIONS
### (Additional conditions to be satisfied prior to disbursement of loan proceeds)

BORROWER(S) MUST SIGN AND DATE ALL DOCUMENTS ON THE DATE THE DOCUMENTS ARE DATED.

BORROWER(S) MAY NOT SIGN ANY DOCUMENTS PRIOR TO THE NOTE ISSUED DATE. ANY

CORRECTIONS OR CHANGES TO THE CLOSING DOCUMENTS MUST BE INITIALED BY THE BORROWERS.

COLLATERAL PACKAGE INSTRUCTIONS:

THE CLOSING AGENT MUST PROVIDE THE ORIGINAL NOTE AND ADDENDUMS, EXECUTED OCCUPANCY
AND NAME AFFIDAVIT, COPY OF THE PRELIMINARY TITLE COMMITMENT, AND CERTIFIED COPIES
OF THE SECURITY INSTRUMENT AND ANY RECORDABLE ATTACHMENTS SUCH AS RIDERS, POWER OF
ATTORNEY, AND ASSIGNMENTS.

SUBORDINATE LIENS NOT PERMITTED

CLOSING AGENT TO PROVIDE COPIES OF SOURCE DOCUMENTS FOR ALL FUNDS COLLECTED AT
CLOSING PAID BY THE BORROWER OR ON THE BORROWER'S BEHALF (PERSONAL CHECK, CASHIER
CHECK, MONEY ORDER, ETC) FOR MONIES PAID AT SETTLEMENT AND RETURN IN THE COMPLETE
CLOSING PACKAGE TO THE LENDER.

SELLER'S PAYMENT OF BORROWER'S CLOSING COSTS AND APPLICATION FEES MAY NOT

EXCEED$10,000 AS STATED ON THE SALES CONTRACT OR % OF THE SALES PRICE, WHICHEVER IS
LESS OR THE LOAN WILL BE SUBJECT TO RE-APPROVAL.

TAXES TO BE PAID CURRENT AT CLOSING:

CLOSING AGENT TO INSURE 2018 TAXES ARE PAID CURRENT.

BASED ON THE TITLE COMMITMENT WITH AN EFFECTIVE DATE OF 03/13/2019 AND A TERM OF 90
DAYS, THIS LOAN MUST CLOSE BY 06/13/2019 IF THIS LOAN DOES NOT CLOSE BY THE
EXPIRATION DATE, THE TITLE COMMITMENT EFFECTIVE DATE MUST BE UPDATED OR GAP
COVERAGE PROVIDED. THE TITLE COMMITMENT MUST INCLUDE THE COVER PAGE REFLECTING THE
CONTACT INFORMATION AND THE TERM OF THE COMMITMENT.

TITLE POLICY MUST CONTAIN THE FOLLOWING ENDORSEMENTS (OR THEIR EQUIVALENTS): ALTA 8,
8.1, 9, SURVEY (IF STATE APPLICABLE), AND ANY STATE SPECIFIC. PUD IDENTIFIED RISK
COVERAGE ENDORSEMENT.

ACKNOWLEDGED AND AGREED:

_____     4/19/2019
Settlement Agent                          Date
MATTHEW A DICKASON

 

# Settlement Statement

## Your Order Summary

| | | | | | |
|---|---|---|---|---|---|
| FILE # | GA-19-6038 | PROPERTY ADDRESS | 1826 Ballybunion Drive Johns Creek, GA 30097 | LOAN # | 7511902023 |
| PREPARED | 04/18/19 | | | TITLE BY | Dickason Law Group |
| SETTLEMENT | 04/19/19 | BUYER | Ying Duan | | |
| DISBURSEMENT | 04/19/19 | SELLER | Israel Maloway and Jill A. Maloway | OUR ADDRESS | 1801 Peachtree Street NE Suite 155 Atlanta, GA 30309 |
| SETTLEMENT LOCATION | 11138 State Bridge Road Suite 125 Alpharetta, GA 30022 | LENDER | First IC Bank | OUR PHONE # | (770) 407-5247 |
| | | | | ATTORNEY | Matthew A Dickason |

## Charges

| SELLER DEBIT | SELLER CREDIT | PRIMARY CHARGES & CREDITS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $1,410,000.00 | Sales Price of Property | $1,410,000.00 | |
| | | Deposit | | $15,000.00 |
| | | Loan Amount | | $846,000.00 |
| $10,000.00 | | Seller Credit | | $10,000.00 |

| SELLER DEBIT | SELLER CREDIT | PRORATIONS/ADJUSTMENTS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $1,547.25 | 2019 HOA Dues 04/19/2019 to 12/31/2019 | $1,547.25 | |
| $560.52 | | City/Town Taxes 01/01/2019 to 04/19/2019 | | $560.52 |
| $3,635.52 | | County Taxes 01/01/2019 to 04/19/2019 | | $3,635.52 |

| SELLER DEBIT | SELLER CREDIT | LOAN CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Origination Fee to First IC Bank | $8,460.00 | |
| | | Underwriting Fee to First IC Bank | $500.00 | |
| | | Appraisal Fee to First IC Bank ($625.00 POC by Borrower) | | |
| | | Credit Report Fee to First IC Bank | $28.24 | |
| | | Flood Certification Fee to First IC Bank | $84.00 | |
| | | Tax Service Fee to First IC Bank | $18.00 | |
| | | Prepaid Interest ($129.25 per day from 04/19/2019 to 05/01/2019) | $1,551.00 | |

| SELLER DEBIT | SELLER CREDIT | IMPOUNDS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Homeowner's Insurance $285.29 per month for 1 mo. | $285.29 | |
| | | Property taxes $1191.27 per month for 7 mo. | $8,338.89 | |

| SELLER DEBIT | SELLER CREDIT | PAYOFFS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $643,563.38 | | Payoff to Chase | | |
| | | Principal : $643,269.41 | | |
| | | Additional Interest : $293.97 | | |





| SELLER DEBIT | SELLER CREDIT | GOVERNMENT RECORDING AND TRANSFER CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Recording Fees | $76.00 | |
| | | ---Deed: $12.00 | | |
| | | ---Mortgage: $64.00 | | |
| | | GRMA Fee to First IC Bank | $10.00 | |
| | | Intangible Tax (State Security Instrument Taxes) to Fulton County Clerk of Superior Court | $2,538.00 | |
| | | Real Estate Transfer Tax (State Deed Taxes) to Fulton County Clerk of Superior Court | $1,410.00 | |

| SELLER DEBIT | SELLER CREDIT | COMMISSIONS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $42,300.00 | | Listing Agent Commission to Atlanta Fine Homes Sothebys International | | |
| $42,300.00 | | Selling Agent Commission to Keller Williams Realty Atlanta North Fulton | | |

| SELLER DEBIT | SELLER CREDIT | TITLE CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Title - Courier Fee to Dickason Law Group | $30.00 | |
| | | Title - CPL (Lender) to Investors Title Insurance Company | $45.00 | |
| | | Title - Exam Fee to Dickason Law Group | $225.00 | |
| | | Title - Lender's Title Policy to Investors Title Insurance Company | $2,089.00 | |
| | | Title - Settlement Fee to Dickason Law Group | $595.00 | |
| | | Title - Owner's Title Policy to Investors Title Insurance Company | $3,492.00 | |

| SELLER DEBIT | SELLER CREDIT | MISCELLANEOUS CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $65.00 | | Disbursement Processing Fee to Dickason Law Group | | |
| $250.00 | | HOA Document Prep Fee to St. Ives CC HOA | | |
| | | HOA Initiation Fee to St. Ives CC HOA | $3,000.00 | |
| $740.00 | | Home Warranty to Home Buyers Resale Warranty Corporation | | |
| $5,000.00 | | Selling Agent Bonus to Keller Williams Realty Atlanta North Fulton | | |
| | | Homeowner's Insurance Premium (12 mo.) to Farmers Insurance | $3,423.44 | |

| SELLER DEBIT | SELLER CREDIT | TOTALS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $748,414.42 | $1,411,547.25 | | $1,447,766.11 | $875,196.04 |

**CASH FROM BORROWER**   $572,570.07

**CASH TO SELLER**   $663,132.83

See signature addendum

# Signature Addendum

## Acknowledgement

We/I have carefully reviewed this settlement statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of this settlement statement.

We/I authorize Dickason Law Group to cause the funds to be disbursed in accordance with this statement.

**Buyer**

Ying Duan                                    Date                     4-19-2019

**Sellers**

Israel Malowany                              Date                     4/19/19

JB A Malowany                                Date                     4-19-19

**Settlement Agency**

Settlement Agent                             Date                     4/19/2019



**FIRST BANK**

┌─────────────┐
│ RECEIVED BY │
│             │
└─────────────┘

# APPLICATION FOR WIRE TRANSFER

I/We hereby request First Intercontinental Bank to remit funds as per the instructions below.
I/We have read and agree to the terms and conditions set forth on the second page.

1. CURRENCY AND AMOUNT $  643,363.23

(words)  Six Hundred Forty-Three Thousand Three Hundred Sixty-Three And 23/100 DOLLARS

2. DATE        09/17/19

month / day / year

| | BENEFICIARY | REMITTER |
|---|---|---|
| 3. NAME | JP MORGAN CHASE BANK, N.A<br>CHASE PAYOFF WIRE ACCOUNT<br>OBI TEXT: 1378294167<br>ATTN: PAYOFF PROCESSING. | FIRST IC BANK<br>(For First IC Bank Loan# 7511902023 Ying Duan) |
| 4. ADDRESS | 3415 Vision Dr.<br>Columbus, Oh 43219 | 5593 Buford Hwy<br>Doraville  Ga  30045 |
| 5. TELEPHONE | 1-877-505-2894 | 770-407-1491 |
| 6. BANK NAME | J P Morgan Chase Bank, N.A. | |
| 7. ROUTING No.<br>SWIFT No. | 021000021 | **10. SOURCE OF FUNDS**<br>☒ CUSTOMER   #<br>ACCOUNT No.  11702098 |
| 8. ACCOUNT No. | 323553729 | (Other Receivable GIL )<br>☐ NON-CUSTOMER<br>PAID TO TELLER<br>$ |
| 9. REFERENCE | Loan Number: 1378294167<br>Attn: Payoff Processing<br>Israel & Jill Malowany<br>1826 Ballybunion Dr., Johns Creek, Ga 30097 | |

11. REMITTER'S SIGNATURE   Loan Dept

| BANK USE ONLY | ROUTE VIA | | OFAC | |
|---|---|---|---|---|
| DATE OF WIRE | AMOUNT RECEIVED | | FEE RECEIVED | |
| MEMOPOST<br>☐ YES     ☐ NO | MEMO | | | |
| PREPARED BY<br>Jack Byun | | | CONFIRMED BY | |

Doraville Branch 770.451.7200 | Duluth Branch 678.417.7474 | Sugarloaf Branch 678.475.05?
Suwanee Branch 770.495.1310

# EXHIBIT 5

# Remittance Agreement

By placing a funds transfer order with First Intercontinental Bank (herein after referred to as The Bank), you agree to the following terms and conditions:

1. The Bank may use ordinary language, code or cipher, etc., in giving the Correspondent Bank instructions relating to the payment order.

2. The Bank may reject your order if the information is incomplete or unclear. Any errors in the information provided by you, including misidentification of the beneficiary, incorrect or inconsistent account names, numbers, and misspelling are your responsibility.

3. The Bank shall not be liable for any losses or damages which are:

    1) Attributable to any laws, decrees, regulations, or restrictions imposed by foreign countries,

    2) Arising from the Correspondent Bank's errors, negligence, nonpayment, delays, inability to make payment and / or failure to comply with the instruction of the Bank,

    3) Arising from any losses, errors, mutilations, delays non-delivery or mis-delivery in the course of transmission of the payment order,

    4) Arising from any other causes beyond The Bank's reasonable control, notwithstanding The Bank's having exerted reasonable card.

4. You shall immediately pay, on demand, the postage, cable charges and all other expenses paid by The Bank and / or the Correspondent Bank in connection with this transaction.

5. You agree that within thirty days after you receive notification that your funds transfer order has been executed, you will notify The Bank of any errors. Any interest payable by The Bank shall be at The Bank's rate. However, if you fail to provide notice within one year from the date that you receive notification from The Bank, and claim will be restricted under applicable law.

6. The Bank's cut-off time is 1:00 PM EST for the receipt and processing payment order and communications canceling or amending payment orders. If you request a funds transfer after the cut-off time designated by The Bank, or if the date or day of receipt does not fall on a funds transfer business day, The Bank considers the next fund-transfer business day as the date or day of receipt of the application.

7. Because of the laws of the country in which the recipient bank is located, if you request us to transfer to your recipient U.S. dollars, we can't guarantee that your recipient will be able to receive the U.S. dollars. If your transfer must be converted to the local currency, the recipient bank may charge a fee for this exchange. Regardless of currency transferred, the actual amount that your recipient receives will be reduced by charges of the recipient bank including those for exchanging currency.

8. Amendment and trace charge: $10.00

9. Document retrieval charge: $25.00

    *See Bank Personnel for fees.



**Fax Cover Sheet**

| | | | |
|---|---|---|---|
| **Date:** | 8/28/2019 | **Sent From:** | Chase (Mail Code OH4-7124) |
| **Deliver To:** | Clay ODaniel | | 3415 Vision Dr. |
| **Fax:** | 1-(404) 419-6301 | | Columbus, OH 43219-6009 |

**Confidentiality Notice:**
This transmission is only intended for the use of the individual or entity to whom it is addressed, and may contain information that is confidential or privileged under law. If the reader of this message is not the intended recipient, you are hereby notified that retention, dissemination, distribution, disclosure, printing, copying, or use of any of the information contained in or attached to this fax is strictly prohibited. If you received this fax in error, please notify the sender immediately by telephone and destroy the original.

**Account Number:** 1378294167
**Customer Name:** Israel Malowany and Jill A. Malowany

We've enclosed your free payoff quote and important information about paying off your mortgage. We're sending you this quote because you requested it, your payoff amount changed, or you are reaching your final payment.

**The total payoff amount due for this mortgage is $644,084.39. This amount is good through 09/28/2019.** If 09/28/2019, falls on a holiday or non-working day, the payoff amount is valid if we receive it by 6 p.m. Eastern Time the next business day. See the following pages for the complete breakdown of the total amount due.

**Send your funds to pay off your mortgage using one of these options:**

| **Wire transfer (fastest option):** For same-day processing, we must receive the full payoff amount before 6 p.m. Eastern Time. | **Send a check or money order by overnight or regular mail:** Be sure to write your Chase loan number 1378294167 on the check, and include your name, property address and closing agent's contact information, if any. |
|---|---|
| Include the following information with your wire transfer JPMorgan Chase Bank, N.A. Account number: 323553729 Routing number: 021000021 Account name: Chase Payoff Wire Account OBI text: 1378294167 Attn: Payoff Processing Your name Your property address Your closing agent's contact information | Chase Attn: Payoff Processing Mail Code PP-7456 3415 Vision Dr. Columbus, OH 43219-6009 |

**Here's what you'll need to do before payoff:**
- Continue making your monthly payments until you send us the amount needed to pay off your mortgage.
- If you're enrolled in our automatic payment service, please don't cancel it. If you are not sending funds to pay off your mortgage, we'll continue to withdraw your payments until your principal balance reaches zero or your loan reaches maturity. However, automatic payments do not cover all loan balances, so you may still owe a balance after these payments stop.
- If you pay through another bill payment service, you'll need to cancel your payments after your mortgage has been paid off. Work with your provider in advance so the payment won't be automatically sent after your loan is paid off.

You can request a free updated quote by signing in to chase.com or by calling us anytime at 1-877-505-2894, or 1-800-582-0542 for TTY services. We recommend that you do this on the day you plan to send the funds to avoid a possible double escrow payment. For more information, go to chase.com/payoff.
If you have a subordinate mortgage that was established as part of Home Affordable Modification Program partial claim agreement, you'll receive an additional quote from Novad containing all of the information you need to pay off and release your existing second lien on the property. Both quotes contain the most up-to-date information about your loan and the payoff amounts needed to pay it in full. Send the full payoff amount listed on the Chase quote to us, and send the full payoff amount for your subordinate mortgage to Novad.



**Requestor:**
Fax Number: (404) 419-6301
Clay ODaniel

**Customer Name and Property Address:**
Israel Malowany and Jill A. Malowany
1826 Ballybunion Drive
Johns Creek, GA 30097-0000

### BREAKDOWN OF AMOUNT OWED

| | | | |
|---|---|---|---|
| Principal Balance: | $638,086.66 | Late Charge Balance: | $162.09 |
| Interest from 07/01/2019 to 09/28/2019: | $5,823.64 | Recording Costs: | $12.00 |

Total Amount Secured by Mortgage:.......................................................................................$644,084.39

Total Amount Owed:...........................................................................................................$644,084.39

### FOR INFORMATION ONLY

| | |
|---|---|
| Interest Rate: | 3.75000% |
| Per Diem: | $65.56 |

Please send your payoff funds by wire transfer, check or money order as we've instructed above. After your mortgage is paid off, you'll no longer be able to view account information at chase.com. We recommend that you print or save any loan information or documents you think you may need from chase.com before paying off the loan.

**Here's what to expect after you pay off your loan:**
- We'll send you a letter confirming that your mortgage is paid off within one business day of payoff.
- If we received more than we need to pay off the loan, or if there's a positive escrow balance after payoff, we'll send you a check by mail for this amount. You should receive it within 10 days after paying off the mortgage. If you're refinancing with us, we'll either apply any escrow balance to your new loan and continue to pay the taxes and insurance for your property, or send you a check by mail, depending on the choice you made during the refinance process.
- You can request a copy of the lien release from your county recorder's office 60 to 90 days after payoff.
- We'll send your IRS Form 1098 (Mortgage Interest Statement) by mail in January.
- If your loan had an escrow account to pay your taxes and insurance, you'll now be responsible to pay these directly, unless you have a new mortgage with an escrow account.
- We'll mail all the items listed above to the mailing address on the payoff quote. If your mailing address has changed, please fill out the enclosed form and return it to us.

If you have questions, please visit chase.com/payoff or call us. We accept operator relay calls.

Sincerely,

Chase
1-800-848-9136
chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

# FedPayments Manager℠ -- Funds

| | | | |
|---|---|---|---|
| Environment: | Front-End-PROD | ABA: | 061119794 |
| Mode: | Prod | Service Unit: | 06111979 |
| Cycle Date: | 09/17/2019 | System Date/Time: | 09/17/2019 15:38:31 |

| | | | |
|---|---|---|---|
| Status: | Completed | Message Type: | Standard |
| Create Time: | 09/17/2019 10:51:52 | Test/Prod: | Prod |
| IMAD: | 20190917 QMGFT001 000354 09171113 | | |
| OMAD: | 20190917 B1QGC01R 022757 09171113 | | |

BASIC INFORMATION

| | |
|---|---|
| Sender ABA {3100}: | 061119794 FIRST IC BK |
| Receiver ABA {3400}: | 021000021 JPM CHASE, NYC |
| Amount {2000}: | 643,363.23 |
| Type/Subtype Code {1510}: | 1000 - Transfer of Funds |
| Business Function {3600}: | CTR - Customer Transfer |
| Sender Reference {3320}: | 09171902 |

ORIGINATOR INFORMATION

Originator {5000}

| | |
|---|---|
| ID Code: | D - DDA Account Number |
| Identifier: | 11702098 |
| Name: | FIRST IC BANK |
| Address: | 5593 BUFORD HWY |
| | DORAVILLE GA 30045 |

Originator to Beneficiary  Information {6000}

| | |
|---|---|
| Text: | LOAN NUMBER:1378294167 |
| | ATTN:PAYOFF PROCESSING/ISRAEL & JIL |
| | L MALOWANY/1826 BALLYBUNION DR JOHN |
| | SCREEK GA 30097/TEL 1 877 505 2894 |

BENEFICIARY INFORMATION

Beneficiary {4200}

| | |
|---|---|
| ID Code: | D - DDA Account Number |
| Identifier: | 323553729 |
| Name: | JP MORGAN CHASE BANK N.A CHASE PAYO |
| Address: | FF WIRE ACCOUNT OBI TEXT:1378294167 |
| | ATTN: PAYOFF PROCESSING/3415 VISION |
| | DR COLUMBUS OH 43219 |

FREISEM, MACON, SWANN & MALONE, LLP
ATTORNEYS AT LAW
MONTEITH COMMONS
2905 PIEDMONT ROAD, N. E., SUITE C
ATLANTA, GEORGIA 30305-2755
MAIN LINE: (404) 266-2873
FACSIMILE: (404) 266-3458
WRITER'S DIRECT DIAL: (404) 974-4846

C. CYRUS MALONE III
cmalone@fmsmlaw.com

VIA FEDERAL EXPRESS

August 15, 2019

North American Title Insurance Company
1855 Gateway Boulevard
Suite 600
Concord, CA 94520

RE:   North American Title Insurance Company ("NATIC")
      Closing Protection Letter dated March 25, 2019 ("CPL")
      ("Exhibit 1") issued by Matthew A. Dickason, PC a/k/a
      Dickason Law Group ("Issuing Agent") to First IC Bank
      ("Lender") for Loan # 7511902023 in the amount of
      $846,000.00 (the "Loan") to Ying Duan ("Borrower") secured
      by1826 Ballybunion Drive, Johns Creek, Ga 30097 (the "Real
      Estate") sold by Isreal and Jill Malowany (the "Sellers") on
      April 19, 2019 (the "Closing Date").
      Loss Amount - $657,628.19.

Dear Sir or Madam:

      This firm represents the Lender named above which hereby gives NATIC
written notice of a claim under the CPL for a loss amount resulting from the
Issuing Agent's failure to pay off the Sellers' Loan to JP Chase Morgan Chase
("Chase") as per Lender's General Closing Instructions and Specific Closing
Instructions to the Issuing Agent attached as Exhibit 2. The Sellers' Loan is
referenced in Item 8 of Schedule B, Part 1 of the NATIC Commitment to Issue
Policy #GA-19-6038 issued by Issuing Agent and attached as Exhibit 3.

      The Lender assumed the Loan had been properly closed and funded on the
Closing Date by the Issuing Agent, including paying off the Sellers' Loan as
specified in the Closing Instructions, but was subsequently informed by the
Sellers' counsel that their Loan had not been paid off and the Sellers were
continuing to make payments thereon.

# EXHIBIT 6

North American Title Insurance Co.
August 15, 2019
Page -2-

The Loss Amount to Lender is the missing loan payoff of the Sellers' Loan in the amount of $643,563.38 shown on the Settlement Statement from the Issuing Agent attached as Exhibit 4, plus the three (3) mortgage payments made by the Sellers to prevent Chase from foreclosing on the Sellers' Loan. Sellers' counsel advises the total amount of those payments was $14,064.81, making the Loss Amount $657,628.19.

Valerie Jahn-Grandin's letter of April 22, 2019, from NATIC to Lender purportedly terminating the Issuing Agent and revoking all CPL's issued by the Issuing Agent effective April 15, 2019, could not lawfully revoke the CPL because it was neither issued nor sent to Lender until after the Closing Date.

There are three (3) civil actions pending in the Superior Court of Fulton County, Georgia against the Issuing Agent and Matthew A. Dickason, personally, for similar instances of not applying settlement funds as directed.[1]

Based on the foregoing, it is clear the Issuing Agent mishandled or misappropriated Loan funds in violation of the CPL. Please accept this as formal demand by First IC Bank for payment for this loss in the amount of $657,628.19 as itemized above.

Sincerely yours,

C. Cyrus Malone, Attorney for
First IC Bank

Enclosures

CC:   Valerie Jahn-Grandin, Exec. V-P
      North American Title Insurance Co.
      760 NW 107th Ave. – Suite 401
      Miami, FL 33172

---

[1] Civil Action File 2019CV321160; Investors Title Ins. Co. v. Matthew A. Dickason et al.; Civil Action File 2019CV322730, Brandmortgage Group LLC v. Matthew A. Dickason et al.; Civil Action File 2019CV324313, Ingrum et al. v. Matthew A. Dickason et al.

GA735-19-2604055-02



**NORTH AMERICAN TITLE INSURANCE COMPANY**

| Georgia |
|---|
| ALTA Closing Protection Letter |
| Single Transaction |
| Revised 12-1-11 |

3/25/2019

First IC Bank
ISAOA/ATIMA
5593 Buford Highway

Atlanta, GA 30340
ATTENTION: First IC Bank
Re: Closing Protection Letter

| | *Agent's File #* GA-19-6038 | |
|---|---|---|
| | *Loan #* 7511902023 | *Loan $* 846000.00 |
| *Issuing Agent* | *Approved Attorney (if applicable)* | |
| Dickason Law Group<br>1801 Peachtree Street NE, Suite 155<br>Atlanta, GA 30309 | | |
| *Property Address* | *Approved Settlement Office (if applicable)* | |
| 1826 Ballybunion Drive<br>Johns Creek, GA 30097 | | |
| *Buyer/Borrower:* Ying Duan | | |
| *Brief Legal Description:* | | |

Dear Sir or Madam:

North American Title Insurance Company (the "Company") in consideration of your acceptance of this letter agrees, subject to the Conditions and Exclusions set forth below, to indemnify you for actual loss of settlement funds incurred by you in connection with the closing of the Real Estate Transaction hereafter conducted by the Issuing Agent, Underwritten Title Company or Approved Attorney on or after the date of this letter, provided:

(A) the Company issues or is contractually obligated to issue title insurance for your protection in connection with the closing of the Real Estate Transaction;

(B) you are to be the (i) lender secured by an Insured Mortgage, as defined in the ALTA Loan Policy (6-17-06), its assignee or a warehouse lender, (ii) purchaser of an interest in land, or (iii) lessee of an interest in land; and

(C) the aggregate of all funds you transmit to the Issuing Agent, Underwritten Title Company or Approved Attorney for the Real Estate Transaction does not exceed  the amount secured by the Insured instrument ; and

further provided the loss arises out of:

1. Failure of the Issuing Agent, Underwritten Title Company or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, including the obtaining of documents and the disbursement of funds necessary to establish the status of title or lien, or (b) the obtaining of any other document, specifically required by you, but only to the extent the failure to obtain the other document affects the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, and not to the extent that your instructions require a determination of the validity, enforceability or the effectiveness of the other document, or

2. Fraud, theft, dishonesty or negligence of the Issuing Agent, Underwritten Title Company or Approved Attorney in handling your funds or documents in connection with the closing to the extent that fraud, theft, dishonesty or negligence relates to the status of the title to that interest in land or to the validity, enforceability, and priority of the lien of the mortgage on that interest in land.

If you are a lender protected by this letter, your borrower, your assignee and your warehouse lender in connection with an Insured Mortgage shall be protected as if it was addressed to them.

**Conditions and Exclusions**

1. The Company shall have no liability for loss arising out of:
   a. Failure of the Issuing Agent, Underwritten Title Company or Approved Attorney to comply with closing instructions that

EXHIBIT 1

require title insurance protection inconsistent with that set forth in the Company's title insurance binder or commitment.

    b.   Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as shall result from failure of the Issuing Agent, Underwritten Title Company or Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

    c.   Defects, liens, encumbrances or other matters in connection with the Real Estate Transaction. This Exclusion does not affect the coverage afforded in the Company's title insurance policy issued in connection with the Real Estate Transaction.

    d.   Fraud, theft, dishonesty or negligence of your employee, agent, attorney or broker.

    e.   Your settlement or release of any claim without the Company's written consent.

    f.   Any matters created, suffered, assumed or agreed to by you or known to you.

2.   If the closing is conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of the Company's title insurance policy must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.

3.   When the Company shall have indemnified you pursuant to this letter, it shall be subrogated to all rights and remedies you have against any person or property had you not been indemnified. The Company's liability for indemnification shall be reduced to the extent that you have impaired the value of this right of subrogation.

4.   The Company's liability for loss under this letter shall not exceed the least of:

    (a)  the amount of your settlement funds;

    (b)  the Company's liability under its title insurance policy at the time written notice of a claim is made under this letter; or

    (c)  the value of the lien of the Insured Mortgage, or the interest in the land insured or to be insured under the Company's title insurance policy at the time written notice of a claim is made under this letter.

5.   Payment to you or to the owner of the Indebtedness under the Company's title insurance policy or policies or from any other source shall reduce liability under this letter by the same amount. Payment in accordance with the terms of this letter shall constitute a payment pursuant to Section 10 of the Conditions of the policy.

6.   The Issuing Agent or Underwritten Title Company is the Company's agent only for the limited purpose of issuing title insurance policies. Neither the Issuing Agent, Underwritten Title Company nor the Approved Attorney is the Company's agent for the purpose of providing closing or settlement services. The Company's liability for your losses arising from those closing or settlement services is strictly limited to the protection expressly provided in this letter. The Company shall have no liability for loss resulting from the fraud, theft, dishonesty or negligence of any party to the Real Estate Transaction other than an Issuing Agent, Underwritten Title Company or Approved Attorney, the lack of creditworthiness of any borrower connected with the Real Estate Transaction, or the failure of any collateral to adequately secure a loan connected with the Real Estate Transaction.

7.   You must promptly send written notice of a claim under this letter to the Company at its principal office at 1855 Gateway Boulevard, Suite 600, Concord, CA 94520. If the Company is prejudiced by your failure to provide prompt notice, the Company's liability to you under this letter shall be reduced to the extent of the prejudice. In no event shall the Company be liable for a loss if the written notice is not received by the Company within one year from the date of the closing.

8.   This letter will cover the Real Estate Transaction if it closes within one year after the date of this letter. The Company may terminate its obligation to cover the Real Estate Transaction if it has not closed by sending written notice to the Addressee.

9.   The protection of this letter extends only to real estate in Georgia.

No previous letter, endorsement or similar agreement for closing protection applies to the Real Estate Transaction.

**North American Title Insurance Company**

Valerie Jahn-Grandin
Chief Underwriting Counsel
760 N.W. 107 Avenue, Suite 401
Miami, Florida 33172
800-374-8475
vjahn-grandin@natic..com

Copyright 2006-2011 American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.





**FROM:** FIRST IC BANK
5593 BUFORD HWY
ATLANTA, GEORGIA 30340
Phone: (770)407-1493
Fax: (678)281-1303

**TO:** DICKASON LAW GROUP
1801 PEACHTREE STREET SUITE 155
ATLANTA, GEORGIA 30309
(770)407-5244

**ATTN:** MATTHEW A DICKASON

**RE:** Borrower(s): YING DUAN

Property Address: 1826 BALLYBUNION DRIVE
JOHNS CREEK, GEORGIA 30097

Document Date: APRIL 19, 2019

Closing Date: APRIL 19, 2019

Disbursement: APRIL 19, 2019

Case No.:

Loan No.: 7511902023

App. No.:

Order No.: GA-19-6038

Escrow No.: GA-19-6038

# GENERAL CLOSING INSTRUCTIONS

Do not close or fund this loan unless ALL conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for our loan proceeds and approved secondary financing must pass to you in the form of cash. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property.

You must follow these instructions exactly. These closing instructions can only be modified with our advance written approval. You shall be deemed to have accepted and to be bound by these closing instructions if you fail to notify us in writing to the contrary within 24 hours of your receipt hereof or if you disburse any funds to or for the account of the Borrower(s).

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within    48 HOURS    of the signing. Please return certified copies of those documents that are to be recorded. Failure to comply with these instructions may delay funding.

## EXECUTION OF DOCUMENTS

1.  Each Borrower must sign all documents exactly as his or her name appears on the blank line provided for his or her signature. All signatures must be witnessed if required or customary. All signature acknowledgments must be executed by a person authorized to take acknowledgments in the state of closing.

2.  Any correction to loan documents must be approved in writing by us in advance. No white-out permitted. Approved deletion should be made by marking a single line through the language being deleted. All additions and deletions must be initialed by all borrowers. No corrections or deletions to the Closing Disclosure are permitted.

3.  All Powers of Attorney must be provided to and approved by us in advance. If approved, the Power of Attorney must be recorded in the same county(ies) in which the Security Instrument is recorded, a certified copy provided to us.

*DocMagic EZemxx*
*www.docmagic.com*

# EXHIBIT 2

 

## RESCISSION

1.  If the transaction is subject to rescission, provide each Borrower and each person having any ownership interest in the security property with **two (2) copies** of the completed Notice of Right to Cancel. The Notice of Right to Cancel must be properly completed (including all dates) and each borrower and person given a Notice of Right to Cancel must execute an acknowledgment of receipt. Your failure to properly complete and provide the Notice of Right to Cancel to each person entitled to receive it and obtain an acknowledgment of receipt will delay this closing.

2.  No Borrower or other person having an ownership interest in the Security Property may modify or waive his or her right to rescind without our prior written consent.

3.  If any Borrower or other person having an ownership interest in the security property indicates that he or she wishes to cancel this transaction, contact us immediately for further instructions.

4.  Provide to each Borrower and each person having any ownership interest in the security property a Closing Disclosure, and obtain an acknowledgment of receipt executed by each borrower and person. Your failure to properly provide the Closing Disclosure to each person entitled to receive it and obtain an acknowledgement of receipt will delay this closing.

## SURVEYS

1.  A valid survey dated within 90 days of closing is required in areas where surveys are customary.

2.  The survey must contain all relevant and customary information and certifications and the legal description, lot size and street must agree with the appraisal and closing documents.

## HAZARD INSURANCE

1.  The Borrower(s) must provide satisfactory evidence of hazard insurance coverage and flood insurance coverage if the Property is located in a special flood hazard area.

2.  Dwelling coverage must be equal to the lesser of the loan amount or the full replacement value of the property improvements, and must extend for either a term of at least one (1) year after the closing date for purchase transactions or     six (6)     months after the closing date for refinance transactions.

3.  Loss payee/mortgagee clause to read:   FIRST IC BANK
                                            IT'S SUCCESSORS AND ASSIGNS
                                            5593 BUFORD HWY
                                            ATLANTA, GEORGIA 30340
                                            Loan Number: 7511902023

**ACKNOWLEDGED AND AGREED:**

Settlement Agent   MATTHEW A DICKASON

GENERAL CLOSING INSTRUCTIONS
GCI.MSC 06/16/15                          Page 2 of 2                          DocMagic eForms
                                                                              www.docmagic.com



FROM: FIRST IC BANK
5593 BUFORD HWY
ATLANTA, GEORGIA 30340
Phone: (770)407-1493
Fax: (678)281-1303

TO: DICKASON LAW GROUP
1801 PEACHTREE STREET SUITE 155
ATLANTA, GEORGIA 30309
(770)407-5244

ATTN: MATTHEW A DICKASON

RE:   Borrower(s): YING DUAN


Property Address: 1826 BALLYBUNION DRIVE
JOHNS CREEK, GEORGIA 30097

Document Date: APRIL 19, 2019

Closing Date: APRIL 19, 2019

Disbursement: APRIL 19, 2019

Case No.:

Loan No.: 7511902023

App. No.:

Order No.: GA-19-6038

Escrow No.: GA-19-6038

# SPECIFIC CLOSING INSTRUCTIONS

## LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| (X) Adjustable Rate Note | (X) Borrowers Cert. | (X) Compliance Agreement |
| (X) Deed of Trust | (X) Initial Escrow Acct. Disc. | (X) 4506T |
| (X) Adjustable Rate Rider | Stmt. | (X) CCD |
| (X) Planned Unit Dev. Rider | (X) Impound Auth. | (X) Transfer of Servicing |
| (X) Acknowledgment Waiver Rider | (X) Affidavit and Agrmnt. | (X) AD |
| (X) Program Disclosure | (X) Worksheets | (X) W-9 |
| (X) Payment Letter | (X) Loan Application | (X) General Cls. Instr. |
| (X) Hazard Ins. Req. | (X) Patriot Act | (X) Specific Cls. Instr. |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure
Statement or Closing Disclosure (as applicable) to each Borrower.

## LOAN TERMS:

Loan Amount: 846,000.00
Initial Advance:
Sales Price: 1,410,000.00
Term (Months): 360
Interest Rate: 5.500
Initial Payment: 4,803.49
First Payment Date: 06/01/19
Last Payment Date: 05/01/49

ARM Loan: (X ) Yes  (  ) No
Index: 2.520
Margin: 5.125
Periodic Rate Cap: 2.000
Lifetime Rate Cap: 5.000
Lifetime Rate Floor: 5.125
Interest Change Date: 05/01/24
Payment Change Date: 06/01/24
Loan Purpose: PURCHASE

## PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing. Indicate payoffs on the
HUD-1 Settlement Statement or Closing Disclosure (as applicable) or provide other satisfactory evidence of payoff:


## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

Funding Authorization:
You must contact our office at fei.storm@firsticbank.com to obtain a Funding
authorization prior to disbursing funds for this transaction

**SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS**

## TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the
following:

1. THIS LOAN MUST RECORD IN  1ST  LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE
   NOTED ABOVE.  PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read: YING DUAN


3. Title Policy must contain the following endorsements (or their equivalents):

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except
   (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or
   Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city,
   school or other taxes and assessments not yet due or payable: ALL PAID

   (iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report,
   commitment, binder or equivalent dated MARCH 13, 2019: SEE ATTACHED

## SECONDARY FINANCING:

Secondary financing in the amount of $  NONE                    has been approved

 

## ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID BY |
|------|--------|-----|---------|
| Loan Origination Fee to: FIRST IC BANK | $8,460.00 | | Borrower |
| Underwriting Fee to: First IC Bank | $500.00 | | Borrower |
| Appraisal Fee to: Class Valuation | $625.00 | $625.00 | Borrower |
| Credit Report to: Factual Data | $28.24 | | Borrower |
| Tax Service Fee to: First American | $84.00 | | Borrower |
| Flood Certification to: Service Link | $18.00 | | Borrower |
| Title - Owner's Title Insurance(Optional) to: | $3,492.00 | | Borrower |
| Title - Lender's Title Insurance to: North Am | $2,089.00 | | Borrower |
| Title - Closing Protection Let Fee to: North | $45.00 | | Borrower |
| Title - Courier Fee to: Dickason Law Group | $50.00 | | Borrower |
| Title - Title Examination Fee to: Dickason La | $225.00 | | Borrower |
| Title - Settlement Fee to: Dickason Law Group | $595.00 | | Borrower |
| Recording Mortgage Fee to: County Recorder | $64.00 | | Borrower |
| GRMA to: State of GA | $10.00 | | Borrower |
| Recording Deed Fee to: County Recorder | $12.00 | | Borrower |
| Intangible Tax to: Fulton County Clerk of Sup | $2,538.00 | | Borrower |
| Transfer Tax to: Fulton County Clerk of Super | $1,410.00 | | Borrower |
| HOA Initiation Fee to: ST. IVES CC HOA | $3,000.00 | | Borrower |

Subtotal of Estimated Fees and Costs:  $ ____22,620.24

## PER DIEM INTEREST:

From: 04/19/19          To:05/01/19
(Anticipated Closing Date)

__12__ days at $ ____129.2500____ per day       Subtotal of Per Diem Interest:       $ ____1,551.00

## IMPOUNDS/ESCROWS:

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable).

| | | | | | |
|------|------|------|------|---|---|
| CITY PROPERTY TAX | 7 | month(s) | at $ ____157.43 per Month | = $ ____1,102.01 |
| COUNTY PROPERTY TAX | 7 | month(s) | at $ ____1,033.84 per Month | = $ ____7,236.88 |
| HAZARD INSURANCE | 1 | month(s) | at $ ____285.29 per Month | = $ ____285.29 |
| | | month(s) | at $ ____ per Month | = $ |
| | | month(s) | at $ ____ per Month | = $ |
| | | month(s) | at $ ____ per Month | = $ |

Aggregate Escrow Adjustment:   $ ____0.00

Impound Subtotal:      $ ____8,624.18
Mortgage Ins. Premium:  $
**TOTAL OF FEES AND COSTS:**  $ ____32,795.42

## HUD-1 SETTLEMENT STATEMENT OR CLOSING DISCLOSURE:

The final HUD-1 Settlement Statement or Closing Disclosure (as applicable) must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to FIRST IC BANK @
(678)281-1303          Attention:  Quality Assurance
Send the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to us at the following address within 24 hours of settlement:   5593 BUFORD HWY, ATLANTA, GEORGIA 30340

## ADDITIONAL INFORMATION: BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to: FIRST IC BANK
5593 BUFORD HWY, ATLANTA, GEORGIA 30340
If you have any questions regarding any of these instructions, please contact  FIRST IC BANK
at  (770)407-1493

## BORROWER ACKNOWLEDGMENT: I/We have read and acknowledged receipt of these Closing Instructions.

_____  4-18-2015
Borrower  YING DUAN        Date          Borrower                          Date

_____             _____
Borrower            Date          Borrower                          Date

_____             _____
Borrower            Date          Borrower                          Date

## ACKNOWLEDGED AND AGREED:

Settlement Agent                   4/18/2019
MATTHEW A DICKASON                 Date

SPECIFIC CLOSING INSTRUCTIONS
SCI.MSC  01/31/18                    Page 2 of 2                    DocMagic eForms
www.docmagic.com

American Land Title Association Commitment for Title Insurance – Adopted 08-01-2016
Form C.GU.1007



## NORTH AMERICAN TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

### NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, North American Title Insurance Company, a California Company (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### NORTH AMERICAN TITLE INSURANCE COMPANY

BY  _Emilio Fernandez_, **PRESIDENT**

ATTEST  _Valerie Jahn-Grandin_, **SECRETARY**



INCORPORATED
SEPT 18, 1958
CALIFORNIA

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land
The use of this Form (or any derivative
ALTA members in good standing as of
Reprinted under license from the Amer.

# EXHIBIT 3

AMERICAN
LAND TITLE
ASSOCIATION

COMMITMENT CONDITIONS

1. **DEFINITIONS**
   (a) "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
   (b) "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   (c) "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
   (d) "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   (e) "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   (f) "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
   (g) "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
   (h) "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a) the Notice;
   (b) the Commitment to Issue Policy;
   (c) the Commitment Conditions;
   (d) Schedule A;
   (e) Schedule B, Part I—Requirements; and
   (f) Schedule B, Part II—Exceptions; and
   (g) a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**
   (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      (i) comply with the Schedule B, Part I—Requirements;
      (ii) eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
      (iii) acquire the Title or create the Mortgage covered by this Commitment.
   (b) The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   (c) The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



(d) The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.

(e) The Company shall not be liable for the content of the Transaction Identification Data, if any.

(f) In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

(g) In any event, the Company's liability is limited by the terms and provisions of the Policy.

## 6. LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT

(a) Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

(b) Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

(c) Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

(d) The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

(e) Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

(f) When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

## 7. IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

## 8. PRO-FORMA POLICY

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

*Issued by:*



**NORTH AMERICAN TITLE INSURANCE COMPANY**

1855 Gateway Boulevard, Suite 600
Concord, CA 94520
Or call us at:
Western States: 800-869-3434     Eastern States: 800-374-8475
www.natic.com

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





# North American Title Insurance Company

1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

## COMMITMENT – Schedule A

Transaction Identification Data for reference only:

Issuing Agent: Dickason Law Group

Issuing Office: 1801 Peachtree Street NE, Suite 155, Atlanta, GA 30309

ALTA® Universal ID: 1079845

Loan ID Number: 7511902023

Commitment Number: GA-19-6038

Issuing Office File Number: GA-19-6038

Property Address: 1826 Ballybunion Drive, Johns Creek, GA 30097

Revision Number:

### SCHEDULE A

1. Commitment Date: 03/13/2019

2. Policy to be issued:
   (a) ALTA Homeowner's Policy (12-02-13)
       Proposed Insured: Ying Duan
       Proposed Policy Amount: $1,410,000.00

   (b) ALTA Short Form Loan Policy (12-03-12)
       Proposed Insured: First IC Bank, ISAOA/ATIMA
       5593 Buford Highway, Atlanta, GA 30340
       Proposed Policy Amount: $846,000.00

3. The estate or interest in the Land described or referred to in this Commitment is fee simple.

4. Title to the estate or interest in the Land is at the Commitment date vested in: Israel Malowany and Jill A. Malowany, as Joint Tenants with Rights of Survivorship and not as Tenants in Common by deed dated 12/08/2014 and recorded with Fulton County Clerk of Superior Court on 12/10/2014 in Book 54447, Page 317.

5. The Land is described as follows:
   See attached Exhibit A.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

|  |  |  |
|---|---|---|
| Sean Kasper<br>Dickason Law Group | | **North American Title Insurance Company**<br>Emilio Fernandez<br>*President* |
| | By | |

Agent Signature

Agent Number:
Matt.dickason@dickasonlaw.com

Schedule A – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.** The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**North American Title Insurance Company**
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

# COMMITMENT – Schedule A

Schedule A – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.





# North American Title Insurance Company
1855 Gateway Boulevard, Suite 600 Concord, CA 94520 (800) 374-8475 or (800) 869-3434

# COMMITMENT – Schedule B-I

File No.: GA-19-6038                    Commitment No.: GA-19-6038

### SCHEDULE B, PART I
### Requirements

All of the following Requirements must be met:

1.  Pay the agreed amount for the estate or interest to be insured.

2.  Pay the premiums, fees, and charges for the Policy to the Company

3.  Pay all the taxes and/or assessments, levied and assessed against the land, which are due and payable

4.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

5.  In the Loan Policy to be issued, the company will insure against defects in the title which are filed for record during the period of time between the effective date of this commitment and the date of filing for record of the documents creating the estate or interest being insured, except for matters of which the insured has any knowledge. Any provisions in this commitment which are in conflict herewith are hereby deemed deleted.

6.  Documents, satisfactory to us, creating the interest in the land and/or the mortgage to be insured, must be signed, delivered and recorded:

7.  Deed from Israel Malowany and Jill A. Malowany conveying the premises described in Schedule A herein, to Ying Duan.

    Security Deed from Ying Duan to First IC Bank securing the principal amount of $846,000.00.

8.  Release of the insured property from the Security Deed dated December 8, 2014 and recorded on December 10, 2014 in Book 54447, Page 321 in the official records of Fulton County Clerk of Superior Court, to be paid with proceeds of loan and released in the original principal amount of $700,000.00 from Israel Malowany and Jill A Malowany to JPMorgan Chase Bank, NA.

9.  Release of the insured property from the Security Deed dated October 17, 1994 and recorded on October 31, 1994 in Book 18930, Page 279 in the official records of Fulton County Clerk of Superior Court, to be paid with proceeds of loan and released in the original principal amount of $386,000.00 from Roy E Claassen and Jean M Claassen to Homebanc Mortgage Corporation.

10. Liens and judgments have been searched for names on title.

11. Taxes and Assessments for 2018 for the County of Fulton were Paid in the amount of $12,253.06 on 10/29/2018 for Parcel No. 11 -0942-0339-108-1 (Due Annually on 10/31/2018) and Taxes for 2018 for the City of Johns Creek were Paid in the amount of $1,889.15 on 10/10/2018.

12. Homeowners Association's written confirmation that all condominium or association assessments (special and general), recreational lease payments (if any), dues, or other fees are current; and, if required by the Declaration

This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Schedule B-I – Requirements – ALTA® Commitment for Title Insurance (8/1/16)
Form: C.GU.1007

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



 

# Settlement Statement

## Your Order Summary

| | | | | | |
|---|---|---|---|---|---|
| FILE # | GA-19-6038 | PROPERTY ADDRESS | 1826 Ballybunion Drive Johns Creek, GA 30097 | LOAN # | 7511902023 |
| PREPARED | 04/18/19 | BUYER | Ying Duan | TITLE BY | Dickason Law Group |
| SETTLEMENT | 04/19/19 | SELLER | Israel Malowany and Jill A. Malowany | OUR ADDRESS | 1801 Peachtree Street NE Suite 155 Atlanta, GA 30309 |
| DISBURSEMENT | 04/19/19 | LENDER | First IC Bank | OUR PHONE # | (770) 407-5247 |
| SETTLEMENT LOCATION | 11138 State Bridge Road Suite 125 Alpharetta, GA 30022 | | | ATTORNEY | Matthew A Dickason |

## Charges

| SELLER DEBIT | SELLER CREDIT | PRIMARY CHARGES & CREDITS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $1,410,000.00 | Sales Price of Property | $1,410,000.00 | |
| | | Deposit | | $15,000.00 |
| | | Loan Amount | | $846,000.00 |
| $10,000.00 | | Seller Credit | | $10,000.00 |

| SELLER DEBIT | SELLER CREDIT | PRORATIONS/ADJUSTMENTS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $1,547.25 | 2019 HOA Dues 04/19/2019 to 12/31/2019 | $1,547.25 | |
| $560.52 | | City/Town Taxes 01/01/2019 to 04/19/2019 | | $560.52 |
| $3,635.52 | | County Taxes 01/01/2019 to 04/19/2019 | | $3,635.52 |

| SELLER DEBIT | SELLER CREDIT | LOAN CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Orighation Fee to First IC Bank | $8,460.00 | |
| | | Underwriting Fee to First IC Bank | $500.00 | |
| | | Appraisal Fee to First IC Bank ($625.00 POC by Borrower) | | |
| | | Credit Report Fee to First IC Bank | $28.24 | |
| | | Flood Certification Fee to First IC Bank | $84.00 | |
| | | Tax Service Fee to First IC Bank | $18.00 | |
| | | Prepaid Interest ($129.25 per day from 04/19/2019 to 05/01/2019) | $1,551.00 | |

| SELLER DEBIT | SELLER CREDIT | IMPOUNDS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Homeowner's insurance $285.29 per month for 1 mo. | $285.29 | |
| | | Property taxes $1191.27 per month for 7 mo. | $8,338.89 | |

| SELLER DEBIT | SELLER CREDIT | PAYOFFS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $643,563.38 | | Payoff to Chase | | |
| | | Principal : $643,269.41 | | |
| | | Additional Interest : $293.97 | | |

# EXHIBIT 4

 

| SELLER DEBIT | SELLER CREDIT | GOVERNMENT RECORDING AND TRANSFER CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Recording Fees | $76.00 | |
| | | ---Deed: $12.00 | | |
| | | ---Mortgage: $64.00 | | |
| | | GRMA Fee to First IC Bank | $10.00 | |
| | | Intangible Tax (State Security Instrument Taxes) to Fulton County Clerk of Superior Court | $2,538.00 | |
| | | Real Estate Transfer Tax (State Deed Taxes) to Fulton County Clerk of Superior Court | $1,410.00 | |

| SELLER DEBIT | SELLER CREDIT | COMMISSIONS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $42,300.00 | | Listing Agent Commission to Atlanta Fine Homes Sothebys International | | |
| $42,300.00 | | Selling Agent Commission to Keller Williams Realty Atlanta North Fulton | | |

| SELLER DEBIT | SELLER CREDIT | TITLE CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Title - Courier Fee to Dickason Law Group | $50.00 | |
| | | Title - CPL (Lender) to Investors Title Insurance Company | $45.00 | |
| | | Title - Exam Fee to Dickason Law Group | $225.00 | |
| | | Title - Lender's Title Policy to Investors Title Insurance Company | $2,089.00 | |
| | | Title - Settlement Fee to Dickason Law Group | $595.00 | |
| | | Title - Owner's Title Policy to Investors Title Insurance Company | $3,492.00 | |

| SELLER DEBIT | SELLER CREDIT | MISCELLANEOUS CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $65.00 | | Disbursement Processing Fee to Dickason Law Group | | |
| $250.00 | | HOA Document Prep Fee to St. Ives CC HOA | | |
| | | HOA Initiation Fee to St. Ives CC HOA | $3,000.00 | |
| $740.00 | | Home Warranty to Home Buyers Resale Warranty Corporation | | |
| $5,000.00 | | Selling Agent Bonus to Keller Williams Realty Atlanta North Fulton | | |
| | | Homeowner's Insurance Premium (12 mo.) to Farmers Insurance | $3,423.44 | |

| SELLER DEBIT | SELLER CREDIT | TOTALS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $748,414.42 | $1,411,547.25 | | $1,447,766.11 | $875,196.04 |

**CASH FROM BORROWER**   $572,570.07

**CASH TO SELLER**   $663,132.83

**See signature addendum**

 

# Signature Addendum

## Acknowledgement

We/I have carefully reviewed this settlement statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of this settlement statement.

We/I authorize Dickason Law Group to cause the funds to be disbursed in accordance with this statement.

**Buyer**

_____   4-19-2019
Ying Duan                              Date

**Sellers**

_____   4/19/19
Israel Malowany                      Date

_____   4-19-19
Jill A Malowany                      Date

**Settlement Agency**

_____   4/19/2019
Settlement Agent                    Date

Cyrus Malone III

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Tuesday, August 20, 2019 11:44 AM |
| **To:** | Cyrus Malone III |
| **Subject:** | FedEx Shipment 776004963796 Delivered |

# Your package has been delivered

## Tracking # 776004963796

Ship date:
**Fri, 8/16/2019**

Cyrus Malone
Atlanta, GA 30305
US



**Delivered**

Delivery date:
**Tue, 8/20/2019 8:38 am**

**North American Title Insurance Co.**
1855 Gateway Boulevard
Suite 600
CONCORD, CA 94520
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 776004963796 |
| Status: | Delivered: 08/20/2019 08:38 AM Signed for By: V.MENA |
| Door Tag number: | DT105284621464 |
| Reference: | 1st IC - Duan - NATIC |
| Signed for by: | V.MENA |
| Delivery location: | CONCORD, CA |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Standard Overnight® |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |
| Standard transit: | 8/19/2019 by 3:00 pm |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:44 AM CDT on 08/20/2019.
All weights are estimated.

1

E-FILED IN OFFICE - AK
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**19-C-06844-S3**
**10/16/2019 4:23 PM**

*[signature]*
CLERK OF STATE COURT

**CORP DEFT   10/10/2019**

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

FIRST IC BANK

        Plaintiff

VS

                                              CIVIL ACTION
                                              CASE  19C 06844-3

NORTH AMERICAN TITLE INSURANCE COMPANY

        Defendant(s)

AFFIDAVIT OF SERVICE

    Comes now, Karen Lobin Perkins, having been duly sworn, deposes and states that he/she did

serve the Defendant:  <u>NORTH AMERICAN TITLE INSURANCE COMPANY</u> by serving Linda Banks,

CT Corporation Systems Inc., as Agent.  Served Summons; Complaint and Exhibits  in the above styled

case at 289 S CULVER ST, LAWRENCEVILLE, GA, 30046.  The Agent is described as WF,

Age 60-65 yrs, Weight  150 lbs, Height 5 ft 2 in.

    The Date of Service is 9:08am <u>10/10/2019</u>.

*[signature]*

_____
Karen Lobin Perkins
I am designated Special Agent for Service
of Process by order of this Court

Jerry Lobin Process Service Inc
Fee for this service is  $   40.00

Sworn to and subscribed before me

*[signature]*

_____
Notary Public
MALONE
BUSZ 9/16

Dena Bennett
Notary Public

OCT 1 4 2019
Clayton County, Georgia
Commission Expires
Mar. 18, 2022



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY GA

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

2018 DEC -6  AM 8: 38

RICHARD ALEXANDER, CLERK

IN RE: Permanent Process Servers

Case Number:

18  C  09257- T

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order up to and including January 4, 2020.

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___5th___ day of ___December___, 20 18.

_____
Presiding Judge
Gwinnett County State Court

Applicant:

Name

Address

KAREN LOBIN PERKINS
1395 FAIRBANKS ST SW
ATLANTA GA 30310