IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FIRST IC BANK,<br><br>  Plaintiff,<br><br>v.<br><br>NORTH AMERICAN TITLE INSURANCE COMPANY and INVESTORS TITLE INSURANCE COMPANY,<br><br>  Defendants. | Civil Action No.<br>1:19-cv-05055-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant North American Title Insurance Company's (North American) motion to dismiss [ECF 25]. For the following reasons, North American's motion is **GRANTED**.

**I.   BACKGROUND**[1]

On March 15, 2019, Ying Duan executed an agreement with Israel and Jill Malowany to purchase real property located in Johns Creek, Georgia

---

[1]   The Court treats the following factual allegations as true for purposes of this motion. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

(the Property).² The parties selected Allen Chang—Dickason Law Group (collectively, Dickason) as the closing attorney.³ To finance the purchase of the Property, Duan executed a loan agreement with Plaintiff First IC Bank.⁴ The agreement provided that a portion of the loan would be used to satisfy an existing security interest held by J.P Morgan Chase Bank (JPM), thereby giving First IC Bank a first-priority interest in the Property after closing.⁵

On March 25, 2019, Dickason—acting on behalf of North American—issued a closing protection letter to First IC Bank (the NATIC CPL).⁶ The letter confirmed North American's agreement to indemnify First IC Bank for certain potential losses connected with the closing on the sale of the Property.⁷ Unbeknownst to First IC Bank, on April 15, 2019, North American terminated Dickason as the issuing agent for the NATIC CPL.⁸ Three days later—and also unbeknownst to First IC Bank—Defendant Investors Title Insurance Company (Investors) issued a

---

2   ECF 23, ¶ 7. *See also* ECF 23-1.

3   ECF 23, ¶ 8. *See also* ECF 23-2.

4   ECF 23, ¶ 9.

5   *Id*. This money is referred to as the "Settlement Funds." *Id*. ¶¶ 42, 53.

6   *Id*. ¶ 10. *See also* ECF 23-3.

7   ECF 23, ¶ 10.

8   *Id*. ¶ 13.

second closing protection letter to First IC Bank (the ITIC CPL).[9] According to First IC Bank, although Dickason was acting as the bank's agent for these purposes, Dickason did not inform it of the change in title insurance companies or send First IC Bank a copy of the ITIC CPL.[10]

On April 19, 2019, First IC Bank sent Dickason instructions to perform the closing and wired it $826,724.58 to fund the purchase.[11] The sale closed that same day. On May 24, 2019, Duan notified First IC Bank that JPM's security interest had not been satisfied and JPM demanded that the Malowanys make further mortgage payments or foreclosure proceedings would be initiated.[12] According to First IC Bank, Dickason did not use the Settlement Funds to satisfy JPM's security interest as directed, but instead misappropriated them.[13] The Malowanys subsequently made three mortgage payments to JPM before First IC Bank, on September 17,

---

[9]   *Id.* ¶ 14. *See also* ECF 23-5.

[10]  ECF 23, ¶ 18.

[11]  *Id.* ¶¶ 16–17. *See also* ECF 23-7.

[12]  ECF 23, ¶ 21.

[13]  *Id.* ¶ 29.

2019, paid JPM $643,363.23 to satisfy the loan.[14] First IC Bank demanded Investors indemnify it for the losses under the ITIC CPL, but Investors declined to do so.[15]

On September 19, 2019, First IC Bank initiated this action solely against North American in the State Court of Gwinnett County, Georgia.[16] On November 7, 2019, North American timely removed to this Court.[17] On June 11, 2020, the Court granted First IC Bank's motion for leave to file an Amended Complaint.[18] It did so on June 24, adding Investors as a named Defendant and asserting six claims for relief.[19] On July 8, North American filed the instant motion to dismiss.[20] First IC Bank filed a response in opposition on July 22.[21] North American filed its reply on August 4.[22]

---

[14]  *Id.* ¶¶ 31–32.

[15]  *Id.* ¶ 35.

[16]  *See generally* ECF 1-1.

[17]  ECF 1.

[18]  ECF 22. That Order also resolved a motion to dismiss filed by North American [ECF 2].

[19]  ECF 23.

[20]  ECF 25.

[21]  ECF 27.

[22]  ECF 29; ECF 30.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

This pleading standard "does not require detailed factual allegations," but "requires more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted). A complaint providing "mere 'labels and conclusions,' 'formulaic recitations of the elements of a cause of action,' or 'naked assertions devoid of further factual enhancement'" will not suffice. *Kinsey v. MLH Fin. Servs., Inc.*, 509 F. App'x 852, 853 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Although the "plausibility standard is not akin to a probability requirement

at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

North American argues that First IC Bank's breach of contract (Count I) and conversion (Count II) claims must be dismissed. The Court addresses each in turn.

### a.   Breach of Contract Against North American (Count I)

First IC Bank alleges North American breached its obligations under the NATIC CPL based on Dickason's unauthorized use of the Settlement Funds. In Georgia, the elements of a breach of contract claim are "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584, 590 (2013) (citing *Norton v. Budget Rent A Car System*, 307 Ga. App. 501, 502 (2010)).[23] As a threshold matter, First IC Bank must allege specific facts showing a valid and enforceable contract. *See Neibert v. Computer Scis. Corp.*, No. 1:12-cv-02277-SCJ, 2014 WL 11462721, at *7 (N.D. Ga. Feb. 4, 2014) ("[W]ithout a valid contract, a breach of contract claim does not exist."). North American argues First IC Bank cannot sue under the NATIC CPL because it was not the operative CPL

---

[23]   The parties agree that Georgia law governs First IC Bank's claims.

at closing, as Dickason—acting on behalf of First IC Bank—obtained a subsequent CPL and title policy from Investors prior to closing. According to North American, First IC Bank's wiring of money to Dickason constituted acceptance of the ITIC CPL. The Court agrees.

To reiterate, North American—through Dickason as the issuing agent—issued the NATIC CPL on March 25, 2019. On April 15, 2019, North American terminated Dickason as issuing agent. Three days later, Investors issued the ITIC CPL. That document expressly states that it "supersedes and cancels any previous letter or similar agreement for closing protection that applies to the Real Estate Transaction and may not be modified by the Issuing Agent or Approved Attorney."[24] The parties closed on the Property on April 19, 2019. Treating the allegations in the Amended Complaint as true, the NATIC CPL was not in effect at closing and had been superseded by the ITIC CPL.[25]

First IC Bank does not challenge this chronology of events. Instead, it argues that neither Dickason, North American, nor Investors notified it that (1) North American had terminated Dickason as issuing agent, and (2) Investors had issued

---

[24] ECF 23-6, at 4.

[25] The Court notes that, under Georgia law, a CPL is not considered an insurance policy. *Lawyers Title Ins. Corp. v. New Freedom Mortg. Corp.*, 288 Ga. App. 642, 649 (2007).

the ITIC CPL. According to First IC Bank, it did not learn of these events until well after closing. To be sure, First IC Bank expressly instructed Dickason to pay North American—not Investors—based on the former's CPL. Treating First IC Bank's assertions as true, the result remains the same. First IC Bank's own allegations confirm that Dickason acted as its agent for closing at all relevant times.[26] Under Georgia law, an agent's actions are binding on, and enforceable against, the principal. O.C.G.A. § 10-6-56 ("The principal shall be bound by all representations made by his agent in the business of his agency and also by his willful concealment of material facts, although they are unknown to the principal and known only by the agent."). By signing the ITIC CPL as First IC Bank's closing and settlement agent, Dickason bound First IC Bank to the letter's terms, including the clause specifying that the ITIC CPL superseded the NATIC CPL. Even if Dickason did not inform First IC Bank of the switch, the bank is nonetheless charged with constructive knowledge: "Under Georgia law, the knowledge of an agent is imputed to the principal." *Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Ga.*, 337 F. Supp. 2d 1339, 1353 (N.D. Ga. 2004) (citing O.C.G.A. § 10–6–58 (2004); *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 431 (1995); *Dawes Mining*

---

[26]   ECF 23, ¶ 8. *See also* ECF 23-2.

*Co., Inc. v. Callahan*, 246 Ga. 531, 534 (1980)). *See also Chicagoland Vending, Inc. v. Parkside Ctr., Ltd.*, 265 Ga. 318, 319 (1995) ("[T]he law imputes to the principal all notice or knowledge concerning the subject matter of the agency which the agent acquires while acting as agent and within the scope of his authority, and this includes, subject to certain exceptions, notice or knowledge which he may have acquired previously.").

First IC Bank is likewise charged with actual knowledge of the replacement of the NATIC CPL with the ITIC CPL. The settlement statement—prepared by Dickason, signed by Duan and the Malowanys, and reviewed by First IC Bank—expressly provided that Dickason used the Settlement Funds to pay Investors pursuant to the ITIC CPL.[27] First IC Bank responds that "among many papers documenting closing . . . [it] did not notice" the change.[28] This oversight does not change the result. *See Sumitomo*, 337 F. Supp. 2d at 1354 (finding that the "defendants had both constructive and actual knowledge of the Certificates of Insurance, and are bound by the terms of those Certificates of Insurance" where defendants "took no action to countermand [the agent's] authority, reserve rights, or otherwise challenge the Certificates of Insurance until this lawsuit was filed

---

[27]   ECF 23-8, at 2.
[28]   ECF 23, ¶¶ 19–20.

against them."). At bottom, First IC Bank cannot rely on its failure to closely read the closing documents. First IC Bank's breach of contract claim against North American must be dismissed.

### b.     Conversion Against North American (Count II)

First IC Bank alleges North American is liable for conversion because Dickason—acting as North American's agent—did not use First IC Bank's Settlement Funds as directed in the closing instructions, but instead misappropriated a certain amount of those funds. Under Georgia law, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 276 Ga. 817, 819 (2003). *See also Landcastle Acquisition Corp. v. Renasant Bank*, 465 F. Supp. 3d 1329, 1340 (N.D. Ga. 2020) ("To state a claim for conversion, a plaintiff must normally allege four elements: (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.") (citing *Pierce v. Clayton Cnty., Ga.*, 717 F. App'x 866, 872 (11th Cir. 2017); *City of Atlanta v. Hotels.com, L.P.*, 332 Ga. App. 888, 891 (2015)).

Bedrock Georgia law states:

> Tangible personalty or specific intangible property may be the subject for an action for conversion, but as fungible intangible personal property, money, generally, is not subject to a civil action for trover with an election for damages for its conversion. While money constitutes personal property, money is intangible personalty that is fungible, because it belongs to a class of property which cannot be differentiated by specific identification unless there has been created a specific fund that has been set aside from other money.

*Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2001) (citations omitted). *See also City of Atlanta*, 332 Ga. App. at 891 ("The general rule is that money is not a type of property that is subject to an action for conversion."); *Internal Med. All., LLC v. Budell*, 290 Ga. App. 231, 239 (2008) ("[C]onversion is not a viable claim where there is nothing more than a failure by the defendant to pay money owed to the plaintiff.").

One relevant exception is recognized; money can be the subject of a conversion action if it "comprise[s] a specific, separate, identifiable fund." *Taylor*, 250 Ga. App. at 359 ("An action for conversion will not lie for the recovery of money; however, there exists an exception to the general rule, that is, where the allegedly converted money is specific and identifiable.") (brackets omitted). In particular, a specific amount of money disbursed via wire transfer may be the subject of a conversion claim. *Trey Inman & Assocs., P.C. v. Bank of Am., N.A.*, 306

Ga. App. 451, 458–59 (2010). At bottom, if a plaintiff "is not seeking to recover some specific money . . . but instead seeks to recover a certain amount of money generally . . . it is not such a case for which a cause of action for conversion was intended." *City of Atlanta*, 332 Ga. App. at 891 (citations and punctuation omitted).

Although First IC Bank wired Dickason a specific and identifiable amount of money, First IC Bank is not seeking to recover that full amount. Instead, according to its own allegations, First IC Bank is *only* seeking to recover "all sums it had to pay by reason of [North American's] breach of its contractual obligations to apply the closing funds . . . to pay off the [JPM] loan which sum is believed to be $643,363.23."[29] In other words, First IC Bank brings this claim not to recover the specific wire transfer, but to recover an amount it paid to satisfy JPM's earlier-in-time security interest on the Property. Like *City of Atlanta*, First IC Bank does not rely on a tangible instrument, but is simply attempting to "recover a certain amount of money generally." *Id.* This is precisely the type of conversion claim precluded by Georgia law. Therefore, Count II must be dismissed.[30]

---

[29] ECF 23, at 15.

[30] In Count III, First IC Bank asserts a claim against North American for attorneys' fees and litigation expenses [ECF 23, ¶ 44]. Since all of First IC Bank's substantive counts against North American must be dismissed, it has no independent basis to pursue its fees and costs. Count III must be dismissed.

Ga. App. 451, 458–59 (2010). At bottom, if a plaintiff "is not seeking to recover some specific money . . . but instead seeks to recover a certain amount of money generally . . . it is not such a case for which a cause of action for conversion was intended." *City of Atlanta*, 332 Ga. App. at 891 (citations and punctuation omitted).

Although First IC Bank wired Dickason a specific and identifiable amount of money, First IC Bank is not seeking to recover that full amount. Instead, according to its own allegations, First IC Bank is *only* seeking to recover "all sums it had to pay by reason of [North American's] breach of its contractual obligations to apply the closing funds . . . to pay off the [JPM] loan which sum is believed to be $643,363.23."[29] In other words, First IC Bank brings this claim not to recover the specific wire transfer, but to recover an amount it paid to satisfy JPM's earlier-in-time security interest on the Property. Like *City of Atlanta*, First IC Bank does not rely on a tangible instrument, but is simply attempting to "recover a certain amount of money generally." *Id.* This is precisely the type of conversion claim precluded by Georgia law. Therefore, Count II must be dismissed.[30]

---

[29] ECF 23, at 15.

[30] In Count III, First IC Bank asserts a claim against North American for attorneys' fees and litigation expenses [ECF 23, ¶ 44]. Since all of First IC Bank's substantive counts against North American must be dismissed, it has no independent basis to pursue its fees and costs. Count III must be dismissed.

### IV. CONCLUSION

North American's motion to dismiss [ECF 25] is **GRANTED**. First IC Bank's claims against North American are **DISMISSED WITH PREJUDICE**. Additionally, based upon a review of the docket, it does not appear that Investors has been served with process in compliance with Rule 4(m). Within 14 days after the entry of this Order, First IC Bank is **DIRECTED** to show cause why its Amended Complaint against Investors should not be dismissed for failure to timely effectuate service. The Clerk is **INSTRUCTED** to resubmit this Order to undersigned in 14 days.

**SO ORDERED** this the 21st day of January 2021.

Steven D. Grimberg
United States District Court Judge